EDWARD MINTURN *vs.* MANUFACTURERS' INSURANCE COMPANY.

*It seems,* that under the *St.* of 1852, *c.* 312, a demurrer to part of one count in a declaration is inadmissible, even if the matters alleged are divisible in their nature. But if admissible, it goes merely to the manner of stating the cause of action, and cannot be argued before the full court, until the whole case has been tried by a single judge.

This indorsement upon a policy of insurance, "Pay under the within policy to J. S. or order," is only an order to pay him the amount of any loss, and not an assignment of the policy; and if the policy stipulates that it shall " be void in case of its being assigned, transferred or pledged without the previous consent in writing of the insurers," an assignment of the policy and assent of the insurers cannot be shown by oral evidence.

ACTION OF CONTRACT, brought in this court, upon a policy of insurance, whereby the defendants insured " Jones & Johnson, payable to them for whom it concerns, $3800 ; namely, $1100 on one hundred and seventy tons coal, and $2700 on the freight on the same, on board of Brig Oriental, at and from New York to San Francisco."

The policy contained this stipulation : " It is agreed that this policy shall be void in case of its being assigned, transferred or pledged without the previous consent in writing of the insurers ; " and bore these indorsements :

" Pay under the within policy to O. W. Pollitz or order,
" Jones & Johnson."

" May 24th 1850. Assented to. C. W. Cartwright, Pres't."

" June 10th 1850. Pay under the within policy to Edward Minturn or order. O. W. Pollitz."

" November 7th 1850. The Oriental having deviated, by an unreasonable delay in getting to sea, this company, in consideration of seventy six dollars additional premium, waive all objections on account of such delay. C. W. Cartwright, Pres't."

The declaration alleged that the policy was effected by Jones & Johnson as agents for Otto W. Pollitz, and by them assigned to him ; that Pollitz had previously shipped the coal on the brig and paid the freight, and had since, with the defendants' assent in writing, and before the loss, sold and assigned to the plaintiff the coal, the advance freight, and the policy.

The defendants in their answer demurred to so much of the declaration as related to freight, and for cause of demurrer assigned,that it did not appear by the declaration that the plaintiff had any insurable interest therein; and answered on the merits to the rest of the declaration.

This point was disposed of at November term 1855.

*R. Fletcher & S. Bartlett,* for the defendants. The demurrer presents the question whether Pollitz, not being an owner of, or interested in, the brig, had any insurable interest in the freight insured by the policy, so that the plaintiff, claiming under him, can recover that freight in this action. [THOMAS, J. How can this demurrer be argued now? The whole case is not here, and we cannot hear it in fragments. The demurrer is to part of the cause of action, to a part even of one count. If the action had been commenced in the court of common pleas, and that court had ruled upon the demurrer, the case could not have been brought to this court, because there would still be an issue of fact pending in the court of common pleas. Precisely the same difficulty occurs here. The case stands at *nisi prius*.] A demurrer may be to part of the declaration, or to part of a count, provided the matters alleged-are divisible in their nature. 1 Chit. Pl. (6th Amer. ed.) 703. By the new practice act, in personal actions, " the general issue is abolished, and in place thereof the defendant shall file an answer to the declaration;" and " to raise an issue in law, the answer shall contain the statement that the defendant demurs to the declaration, or to some one or more counts therein, as the case may be, and shall assign specially the causes of demurrer." *St.* 1852, *c.* 312, §§ 12, 17. But that act does not change the previous practice, except in the manner of taking issues. The court of common pleas may settle the order of the trial of issues of law and of fact, in cases pending before them, as they please; and a case cannot be removed from that court to this, by exceptions or appeal, until the whole case is disposed of. But this case has always been in this court. And in this court " all issues of law shall be heard and determined exclusively in the full court." Rev. Sts. *c.* 81, § 13. The case must be tried in fragments; if the issue of fact were tried first,

it must be tried by itself, by a single judge and a jury; and then the issue of law would have to be heard by the full court, and if the demurrer were overruled, the case might go back again for a trial of the facts involved in that part of the case to which the demurrer applied. The practice of this court has always been to hear the issue of law first, for the reason that the determination of that would often render a trial of the facts unnecessary. Section 23 of the practice act provides that " every demurrer may, in the first instance, be heard by a single justice ; and his decision as to the verification of an allegation or the misjoinder of counts shall be final, an amendment being allowed as hereinafter provided. But if the cause of demurrer shall be that the facts stated do not in point of law support or answer the action, and the party against whom the decision shall be made shall not pray for leave to amend, the decision of such single justice shall not be final, but such demurrer may be further heard, upon appeal or otherwise, as is now provided in respect to such questions of law," that is to say, by the full court. But this section does not require that every demurrer shall be heard by a single judge, when his decision would not be final.

*C. P. Curtis,* for the plaintiff, was stopped by the court.

Shaw, C. J.* By § 23 of the practice act, ( *St.* 1852, *c.* 312,) if a demurrer goes to the whole cause of action, that is, if it raises a question of law on the merits, the decision of a single judge is not final, but may be revised by the full court. But if the demurrer goes to delay, being taken as to matters of form merely, the decision of the single judge is final. The mention of " the verification of an allegation " in this section, was inadvertently retained, the provision, in the act as reported by the commissioners, requiring pleadings to be verified by the oath of the party, having been stricken out by the legislature in the original practice act of 1851, *c.* 233.

This demurrer is to part only of the cause of action stated in one count, and is therefore inadmissible ; or if admissible, it goes

---

* BIGELOW, J. did not sit in this case.

to the manner in which the cause of action is stated, and is to be passed upon by a single judge. Whenever the cause of demurrer is that the facts alleged will not support the action, that is a question on which the whole court are to pass. Anything short of that goes to the form of the declaration, and the decision of a single judge thereon is final.

The defendants then had leave to withdraw the demurrer, and amend their answer, and the case was tried at March term 1857, before *Merrick,* J., who reported, for the decision of the whole court, the following case :

" In addition to the policy and the indorsements thereon, and some other evidence not necessary now to make mention of, the plaintiff produced evidence to show that, at the time of the issuing of this policy, Otto W. Pollitz and John Codman were the owners of the coal insured, and had prepaid the freight thereof, at the rate of sixteen dollars per ton, from New York to San Francisco ; that the said insurance was made and the said policy procured at their instance and for their benefit, and that they paid the premium charged and received by the defendants therefor ; that subsequently, but before the Oriental left New York, to wit, on or about the 10th of June 1850, the coal insured and the prepaid freight were sold and conveyed by Pollitz, for himself and Codman, to the plaintiff, and the indorsement on the policy was at the same time signed by Pollitz.

" John S. Tyler, called as a witness for the plaintiff, testified that he paid to the defendants the seventy six dollars additional premium mentioned in the indorsement on said policy, dated November 7th 1850, for the plaintiff, and afterwards drew on him for the same, and received that amount of him therefor. The plaintiff offered to prove by this witness that he, at the time of making said payment, informed the defendants that he made it for and on account of the plaintiff; but this part of his proposed testimony, being objected to as incompetent by the defendants, was excluded by the court.

" The defendants thereupon objected that this action could not be maintained upon the evidence produced by the plaintiff,

1st, because he had not shown any contract between themselves and him, or any assignment of said policy to him ; and, 2dly, because he had not shown that if said policy had at any time been assigned to him, the defendants had ever assented in writing thereto.

" The defendants also objected that the plaintiff could, in no event, recover anything on account of the freight of said coal or the prepayment thereof." *

*Curtis & C. P. Curtis, Jr.* for the plaintiff. 1. The indorsement of the 10th of June is a sufficient assignment, if assented to by the defendants, to entitle the plaintiff to recover under the policy. *Wiggin* v. *American Ins. Co.* 18 Pick. 158. *Tolman* v. *Manufacturers' Ins. Co.* 1 Cush. 73. *Hartley* v. *Tapley,* 2 Gray, 565. It is in the nature of a power of attorney irrevocable, coupled with an interest ; and the indorsement of the 7th of November, having been afterwards written on the polic without objection, is to be regarded either as an assent by the underwriters, or a waiver of the necessity of a written assent.

2. The indorsement of November 7th has a twofold character. Like a bill of lading, it is both a receipt and a contract. Tyler's testimony was competent to show from whom the money was received ; that is, to explain that part of the bill of lading which is a receipt. *Brooks* v. *White,* 2 Met. 283. *Gerrish* v. *Washburn,* 9 Pick. 338. *Barrett* v. *Union Mutual Fire Ins. Co.* 7 Cush. 175. *O'Brien* v. *Gilchrist,* 34 Maine, 554. 1 Greenl. Ev. §§ 297, 305. Browne on St. of Frauds, § 91. 2 Parsons on Con. 67.

*Fletcher & S. E. Sewall,* for the defendants.

The opinion was delivered at March term 1859.

DEWEY, J. Upon the well settled principles of the insurance law, the policy procured in behalf of Pollitz and Codman upon their property and interests, was a policy for their benefit. It was however not only essential that they should have an interest in the subject of the insurance at the time of receiving the policy, but this interest of the assured must continue and be

---

* See *Minturn* v. *Warren Ins. Co.* 2 Allen, 86.

subsisting at the time of the loss. Where there has been an absolute transfer of the property insured, leaving no interest in the assured, there is nothing for the insurance to operate upon in case of loss, as there can be no injury to the assured resulting therefrom. *Carroll* v. *Boston Marine Ins. Co.* 8 Mass. 515. *Gordon* v. *Massachusetts Mutual Fire & Marine Ins. Co.* 2 Pick. 258. *Wilson* v. *Hill*, 3 Met. 68. *Macomber* v. *Cambridge Mutual Fire Ins. Co.* 8 Cush. 133.

It appearing from the facts stated in the case that Pollitz and Codman had before the loss conveyed all their interest in the subject of the insurance to the plaintiff, it is quite obvious that they ceased to have any interest in themselves, that was covered by this policy, for their personal benefit, and no recovery can be had on their behalf.

The further inquiry is, whether the plaintiff has any claim in his own right? As a mere purchaser of the property insured, he acquired in his own right no interest in the policy that had previously existed in favor of his vendors. The claim is of a different character. It is that he holds an assignment of the policy made to his vendor, and is by force thereof a party to the same. The question is not as to the right of the plaintiff to sue in his own name on this policy, for a loss accruing to the property of Pollitz and Codman, if such loss had occurred while they were interested in the same, but whether the newly acquired interest of the plaintiff was insured by force of the acts of these parties.

The policy bears the following indorsement, made June 10th 1850 : " Pay under the within policy to Edward Minturn or order. O. W. Pollitz." But this indorsement was a mere order to pay to Minturn any loss that might happen to Pollitz and Codman. It was not an assignment by virtue of which any new party to the insurance was introduced. *Fogg* v. *Middlesex Mutual Fire Ins. Co.* 10 Cush. 337. *Loring* v. *Manufacturers' Ins. Co.* 8 Gray, 29, 30. These cases are very full to the point that such an order transfers nothing more than what may be recovered for a loss on the interest of the party originally insured.

But it is said that the fact of the sale of the interest to Min‧ turn being shown by other evidence, and that it ₀was accompanied by an assignment of the policy to the purchaser, and thus made known orally to the insurers, and by them assented to, it establishes a new and original promise to the assignee to indemnify him against his loss, if any occurs. This doctrine has much to sustain it in the elementary books and reported cases, and was assumed by the court as correct in the case of *Wilson* v. *Hil'*, 3 Met. 68.

Without questioning this as applicable to those policies where there is no restrictive clause regulating assignments of policies, and the vesting of new interests in third parties, the present case might be decided upon the stipulations of this particular policy, strict, it may be, but such as the parties have entered into. This policy has on its face, and as a part of the contract, " It is agreed that this policy shall be void in case of its being assigned, transferred or pledged without the previous consent in writing of the insurers." There is no assent in writing by the insurers to the transfer that was made of the interest of Pollitz and Codman, and the assignment of this policy to Minturn, tu secure the new interest thus acquired by his purchase. The only direct assent in writing by the defendants is to the order of Jones & Johnson to " pay under the within policy to O. W. Pollitz or order." The only assent in writing to the order of Pollitz " to pay the within to Edward Minturn," is such as may result from the written acknowledgment of the defendants' having received subsequently an additional premium for delay in getting the vessel to sea, and waiving all objections on account of such delay.

But as regards the evidence of written assent, the objection is the broader one that it is only an assent to the order to pay the loss under the policy upon the interest of Pollitz and Codman. As such it might have been good and sufficient, but it was no written assent to the assignment of the policy to Minturn, as the owner of the goods and interest assured, nor stipulation to make good to him his loss on his property thus purchased.

In the opinion of the court the defence taken upon this point

·must prevail. The parties have stipulated that the written assent of the insurance company to any assignment or transfer of the policy must be previously given. The rights of the plaintiff to recover must necessarily, after the sale by Pollitz and Codman of all their interest, rest wholly upon the ground of his being a purchaser, with an assignment of the policy. As an assignee claiming under a new interest thus acquired, he should have procured the previous consent of the defendants in writing thereto.

The oral evidence was properly excluded, as by the stipulations of the policy the assent to the assignment was required to be in writing. *Judgment for the defendants.*