ATLAS REDUCTION CO. et al. v. NEW ZEALAND INS. CO. OF NEW ZEALAND.

(Circuit Court of Appeals, Eighth Circuit. April 24, 1905.)

No. 1,934.

1. INSURANCE—POLICY IS CONTRACT.

A policy of insurance is a contract by the terms of which must be measured the right of the insured and the obligation of the insurer.

2. SAME—STIPULATIONS INTENDED TO PRESERVE WRITTEN POLICY FROM CHANGE OR ALTERATION BY PAROL.

Stipulations in written policies of insurance intended to preserve the policy from change or alteration by parol, and to make it and such indorsements thereon or additions thereto as may be made in writing a complete repository and memorial of the entire agreement, are valid and for the benefit of both parties and of the community at large; and to give effect to the purpose of such a stipulation, so far as it can reasonably be done, especial care should be taken to find in the policy and in any indorsements thereon or additions thereto the means of its or their proper interpretation, without resort to parol evidence.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, §§ 292–294, 298, 313.]

3. SAME—CONSTRUCTION OF "LOSS PAYABLE" INDORSEMENT.

An indorsement was made upon a policy of fire insurance, by the agents of the insurer, at the request of the insured, as follows: "Subject to all the conditions of this policy, loss, if any, payable to D. & S. as their interest may appear." *Held:* (a) The indorsement must be read in the light of the purpose which actuated the parties in stipulating that the policy could be modified, or any provision thereof waived, only by a writing of equal dignity and credit with the policy itself. (b) Such an indorsement is a common mode of furnishing a species of security by a debtor to his creditor, who may be willing to trust to the debtor's honesty, skill, and success in trade, but who requires some indemnity against such accidents as loss by fire; and it does not create a new contract of insurance with the payee, or abrogate or waive any condition of the policy. (c) The terms of the indorsement are not conflicting, but consistent and plain, and their purpose and effect are to make D. & S. the simple appointees of the insured to receive payment of any loss payable to the insured under the policy, and to receive it, not absolutely, but to the extent of any interest they may have in such payment at the time of the loss, consistently with the due observance by the insured of all the conditions of the policy. (d) The words "as their interest may appear" are plainly prospective, and refer to an interest, not in the property insured, but in the payment of the loss. They are words of restriction, without which the whole loss would be payable absolutely to D. & S., without any showing of an interest in its payment or of the extent of that interest. (e) The indorsement does not give consent to the incumbering of the insured personal property by a chattel mortgage (1) because it does not mention a chattel mortgage, or describe D. & S. as chattel mortgagees, or show that the attention of the parties was directed to a chattel mortgage; (2) because it was not necessary that there should be a chattel mortgage to enable the insured to make a valid appointment of D. & S. to receive payment of the loss, if any, or to give them an interest in the payment of the loss; and (3) because the words "subject to all the conditions of this policy" show that the conditions were not intended to be abrogated or waived, but to have effect and be respected as if the indorsement had not been made, and among the conditions of the policy are these: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the subject of insurance be personal property and be or become incumbered by a chattel mortgage, * * * and no officer, agent, or other representative of this company shall have power to

waive any provision or condition of this policy, * * * unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured, unless so written or attached." (f) There being no claim of fraud or mutual mistake, it is not permissible to show by oral testimony that at the time of making the indorsement the agents knew that the insured personal property was incumbered by a chattel mortgage and intended by the indorsement to consent thereto on behalf of the insurer, because what the agents may have known, and even what they may have said, is of no importance, as under the stipulations of the policy they were powerless to waive any provision or condition, or to affect the rights of the parties, except by a writing indorsed upon or added to the policy, and whatever was not so indorsed upon the policy or added to it was the same as if not done, because it was not authorized.

4. SAME—STIPULATION AGAINST CHATTEL MORTGAGE—BREACH.

Where a policy of fire insurance covering personal property contains a stipulation entirely avoiding the policy, if such property be or become incumbered by a chattel mortgage, without consent thereto being indorsed upon or added to the policy, the giving of a chattel mortgage upon such property by the insured during the term of the policy, without the consent of the insurer indorsed upon or added to the policy, terminates the insurance and prevents a recovery under the policy by the insured or his appointee for a subsequent loss by fire.

Hook, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Colorado.

For opinion below, see 121 Fed. 929.

This was an action at law by the Atlas Reduction Company, a Colorado corporation, George B. Dodge, and Archie M. Stevenson, upon a policy of fire insurance issued by the New Zealand Insurance Company, a New Zealand corporation, to the reduction company, upon certain property, real and personal—principally personal—belonging to the latter company, and connected with what was known as the "Delano Chlorination Mill." The policy contained these provisions:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership; * * * or if the subject of insurance be personal property and be or become incumbered by a chattel mortgage; * * * or if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment or by voluntary act of the insured or otherwise; or if this policy be assigned before loss. * * * If this policy shall * * * become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate. * * * This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto, and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions, no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

After the issuance of the policy the property insured was incumbered by two mortgages, one of the realty and the other of the chattels, executed to Dodge and Stevenson to secure the payment of an indebtedness owing to them by the reduction company. On the same day the insurance company's

agents at Denver, Colo., who had negotiated and issued the policy, made the following indorsement thereon: "Subject to all the conditions of this policy, loss, if any, payable to G. B. Dodge and A. M. Stevenson, as their interest may appear." Subsequently, during the term for which the policy was issued, and during the continuance of the indebtedness secured by the mortgages, the property was destroyed by fire. To the complaint, which set forth these facts, a demurrer was sustained ([C. C.] 121 Fed. 929), and, the plaintiffs declining to amend, judgment was given for the defendant.

Daniel Prescott, for plaintiffs in error.

Sylvester G. Williams, for defendant in error.

Before SANBORN, VAN DEVANTER, and HOOK, Circuit Judges.

VAN DEVANTER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

In approaching the decision of any controversy arising out of a policy of insurance it is well to have in mind the cardinal rule that the policy is a contract by which must be measured the right of the insured and the obligation of the insurer. As was said by Mr. Justice Jackson in speaking for the court in Imperial Fire Insurance Company v. Coos County, 151 U. S. 452, 462, 14 Sup. Ct. 379, 38 L. Ed. 231:

"Contracts of insurance are contracts of indemnity upon the terms and conditions specified in the policy or policies embodying the agreement of the parties. For a comparatively small consideration the insurer undertakes to guaranty the insured against loss or damage upon the terms and conditions agreed upon, and upon no other; and when called upon to pay, in case of loss, the insurer, therefore, may justly insist upon the fulfilment of these terms. If the insured cannot bring himself within the conditions of the policy, he is not entitled to recover for the loss. The terms of the policy constitute the measure of the insurer's liability, and, in order to recover, the assured must show himself within those terms; and if it appears that the contract has been terminated by the violation on the part of the assured of its conditions, then there can be no right of recovery. The compliance of the assured with the terms of the contract is a condition precedent to the right of recovery. If the assured has violated or failed to perform the conditions of the contract, and such violation or want of performance has not been waived by the insurer, then the assured cannot recover. It is immaterial to consider 'the reasons for the conditions or provisions on which the contract is made to terminate or any other provision of the policy which has been accepted and agreed upon. It is enough that the parties have made certain terms, conditions on which their contract shall continue or terminate. The courts may not make a contract for the parties. Their function and duty consist simply in enforcing and carrying out the one actually made."

See, also, Jeffries v. Life Insurance Co., 22 Wall. 47, 54, 22 L. Ed. 833; Ætna Life Insurance Co. v. France, 91 U. S. 510, 512, 23 L. Ed. 401; Phœnix Life Insurance Co. v. Raddin, 120 U. S. 183, 189, 7 Sup. Ct. 500, 30 L. Ed. 644; National Surety Co. v. Long, 60 C. C. A. 623, 627, 125 Fed. 887.

Stipulations such as are contained in this policy have frequently been subjected to consideration in the courts, and their validity is not open to question. Carpenter v. Providence Washington Insurance Co., 16 Pet. 495, 512, 10 L. Ed. 1044; Imperial Fire Insurance Co. v. Coos County, 151 U. S. 452, 463, 14 Sup. Ct. 379, 38 L. Ed. 231; Northern Assurance Co. v. Grand View Building Associa-

tion, 183 U. S. 308, 361, 364, 22 Sup. Ct. 133, 46 L. Ed. 213; Hunt v. Springfield Fire & Marine Insurance Co., 196 U. S. 47, 25 Sup. Ct. 179, 49 L. Ed. 381; Forbes v. Agawam Mutual Fire Insurance Co., 9 Cush. 470; Worcester Bank v. Hartford Fire Insurance Co., 11 Cush. 265, 59 Am. Dec. 145; Walsh v. Hartford Fire Insurance Co., 73 N. Y. 5; Smith v. Insurance Co., 60 Vt. 682, 691, 15 Atl. 353, 1 L. R. A. 216, 6 Am. St. Rep. 144; Cleaver v. Traders' Insurance Co., 71 Mich. 414, 39 N. W. 571, 15 Am. St. Rep. 275; Winehill v. Germania Insurance Co., 27 La. Ann. 63; Girard Fire & Marine Insurance Co. v. Hebard, 95 Pa. 45; Hutchinson v. Western Insurance Co., 21 Mo. 97, 64 Am. Dec. 218.

One claim of the plaintiffs is that the allegations of the complaint are to the effect that the giving of the chattel mortgage was consented to by the insurance company, acting through those in superior authority, such as the board of directors, and not through subordinate agents, whose power was restricted by the terms of the policy, and that it was not necessary that consent so given be indorsed upon or added to the policy. But, whatever might have been the effect of consent so given, but not indorsed upon or added to the policy, we think the allegations of the complaint are not reasonably susceptible of the interpretation suggested, and that they mean nothing more than that consent to the chattel mortgage was given at the time and place when and where the loss payable indorsement was made upon the policy and by the agents who made that indorsement.

The real and controlling question is: What, in view of the plain and unambiguous stipulations in the policy, is the meaning and interpretation of this loss payable indorsement? Obviously, the words used therein must be read in the light of the purpose which actuated the parties in stipulating that the policy could be modified, or any provision or condition thereof waived, only by a writing of equal dignity and credit with the policy itself. Of the purpose of such stipulations it is said in Northern Assurance Company v. Grand View Building Association, supra:

"It should not escape observation that preserving written contracts from change or alteration by verbal testimony of what took place prior to and at the time the parties put their agreements into that form is for the benefit of both parties. In the present case, if the witnesses on whom the plaintiff relied to prove notice to the agent had died, or had forgotten the circumstances, he would thus, if he had depended to prove his contract by evidence extrinsic to the written instrument, have found himself unable to do so. So, on the other side, if the agent had died, or his memory had failed, the defendant company might have been at the mercy of unscrupulous and interested witnesses. It is not an answer to say that such difficulties attend other transactions and negotiations, for it is the knowledge of the inconveniences that attend oral evidence that has led to the custom of putting important agreements in writing, and to the legal doctrine that protects them when so expressed, and when no fraud or mutual mistake exists, from being changed or modified by the testimony of witnesses as to conversations and negotiations that may never have taken place, or the real nature and meaning of which may have faded from recollection. Besides the importance of such considerations to the parties immediately concerned in business transactions, the community at large have a deep interest in the welfare and prosperity of such beneficial institutions as fire insurance companies. It:

would be very unfortunate if prudent men should be deterred from investing capital in such companies by having reason to fear that conditions which have been found reasonable and necessary to put into policies to protect the companies from faithless agents and from dishonest insurers are liable to be nullified by verdicts based on verbal testimony." 183 U. S. 364, 22 Sup. Ct. 133, 46 L. Ed. 213.

In this policy it was plainly stipulated that, if the subject of insurance be personal property, and be or become incumbered by a chattel mortgage, the entire policy, unless otherwise provided by agreement indorsed thereon or added thereto, should be void; that the policy was made and accepted subject to the stipulations and conditions therein, together with such other provisions, agreements, or conditions as should be indorsed thereon or added thereto; that in respect of any provision or condition which by the terms of the policy it was within the power of an officer, agent, or other representative to waive, the power to waive the same could be exercised only by a written indorsement upon or addition to the policy, and that no privilege or permission affecting the insurance should exist or be claimed by the insured unless so written or attached. The loss payable indorsement renewed, and in effect reiterated, all of these stipulations by declaring that it was made "subject to all the conditions of this policy." It is plain, therefore, that the indorsement was written upon the policy in pursuance of a mutual and expressly declared purpose to make the policy with the indorsement a complete repository and memorial of the entire agreement, and to preclude any resort to parol evidence. Effect should be given to this purpose so far as it can reasonably be done, and to that end especial care should be taken to find in the indorsement, and in the policy of which it is part, the means of its proper interpretation.

The fact, as alleged in the complaint, that the indorsement was written upon the policy on the same day that the chattel mortgage was executed, is not material, because at most it would only tend to show that the agents of the company knew of the chattel mortgage when the indorsement was written. There being no allegation of fraud or mutual mistake, and this being an action at law, what the agents may have known, and even what they may have said, is of no importance, because by the stipulations of the policy they were powerless to waive any provision or condition or to affect the rights of the parties except by a writing indorsed upon or added to the policy. Whatever was not so indorsed upon the policy or added to it was the same as if not done, because it was not authorized, and was to be without effect.

Carpenter v. Providence Washington Insurance Co., 16 Pet. 495, 512, 10 L. Ed. 1044, was an action upon a policy of fire insurance containing a provision to the effect that if, without notifying the company, and having the same mentioned in or indorsed upon the policy, the insured then had or should thereafter obtain any other insurance upon the same property, the policy should be void and of no effect. Other insurance was had or obtained, and was not mentioned in or indorsed upon the policy. At the trial the plaintiff

requested the court to instruct the jury that, if the company had notice in fact of the other insurance, this was a compliance with the provision in the policy. The request was refused, and an instruction was given to the effect that notice to the company of the other insurance was not sufficient, but that the same should have been mentioned in or indorsed upon the policy; otherwise the policy became void. Of this it was said by Mr. Justice Story, who delivered the opinion of the court:

"We think this instruction was perfectly correct. It merely expresses the very language and sense of the stipulation of the policy; and it can never be properly said that the stipulation in the policy is complied with when there has been no such mention or indorsement as it positively requires, and without which it declares the policy shall henceforth be void and of no effect."

The subject was again considered and the authorities exhaustively examined in Northern Assurance Co. v. Grand View Building Association, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213, where the ruling in Carpenter v. Providence Washington Insurance Co. was affirmed and applied.

Forbes v. Agawam Mutual Fire Insurance Co., 9 Cush. 470, was an action upon a policy of fire insurance containing a provision to the effect that, if other insurance was had or obtained upon the same property, the policy should be void, unless the other insurance was consented to by the directors, and their consent signified by a statement thereof in the policy, or by an indorsement thereon signed by the secretary. Other insurance was obtained, but the same was not consented to in the manner prescribed in the policy. It appeared by the evidence that in the application for the policy the insured had requested that consent to obtaining other insurance be signified in the policy, and that this application bore an indorsement of approval by one of the directors. Of this it was said by Chief Justice Shaw:

"But we think this evidence is far from warranting the inference sought to be drawn from it. It certainly proves notice of the applicant's desire to have leave to make further insurance, and that this permission might be expressed in the policy. But it was not so expressed, and the noncompliance with such an explicit request is almost as significant as a refusal. And the assent and approval of the director was an approval only of the application, and did not constitute the contract, or any part of it."

Worcester Bank v. Hartford Fire Insurance Co., 11 Cush. 265, 59 Am. Dec. 145, was an action upon a policy of fire insurance containing a provision to the effect that, if the insured should obtain subsequent insurance without giving the company notice thereof, and having the same indorsed on the policy or otherwise acknowledged in writing, the policy should cease, and be of no further effect. The insured obtained subsequent insurance, and exhibited a memorandum thereof to the agent of the company. The agent took the memorandum to make entry of the subsequent insurance upon his book of policies, and returned it to the insured, saying that he had made the entry, and that it would be the same as if indorsed upon the policy. In fact, the agent did not enter on his book all the subsequent insurance mentioned in the memorandum. Upon the au-

thority of Forbes v. Agawam Mutual Fire Insurance Co., supra, it was held that the stipulation in the policy was not complied with, and that the policy was void.

Walsh v. Hartford Fire Insurance Co., 73 N. Y. 5, was an action upon a policy of fire insurance containing a provision to the effect that, if the premises insured should become vacant by the removal of the owner or occupant, and so remain for more than 15 days without notice to the company and consent indorsed upon the policy, the same should become void; and that no officer, agent, or representative of the company should be held to have waived any of the terms and conditions of the policy unless the waiver should be indorsed thereon in writing. The premises became vacant, and remained so for more than 15 days. The insured notified the company's agent that the premises had become vacant, requested him to consent to their remaining so, and inquired if it was necessary that the consent be indorsed on the policy. The agent gave his consent, and made a memorandum thereof in his register, but stated that it was not necessary to indorse the same upon the policy, and no such indorsement was made. The court, referring to the provision in the policy, said:

"This is a plain limitation upon the power of agents, and can mean nothing less than that agents shall not have the power to waive conditions except in one mode, viz., by an indorsement on the policy. The plaintiff is presumed to have known what the contract contained, and the proof tends to the conclusion that this provision was brought to his notice. He saw fit, however, to accept the assurance of the agent that an entry in the register was sufficient. It is difficult to see how, upon the law of contracts and agency, the plaintiff can recover. The entry in the register was not an indorsement on the policy. The oral consent was an act in excess of the known authority of the agent. The provision was designed to protect the company against collusion and fraud, and the dangers and uncertainty of oral testimony. The case seems to be a hard one for the plaintiff; but courts cannot make contracts for parties, nor can they dispense with their provisions."

It follows, as before indicated, that the proper determination of the question whether the incumbrance created by the chattel mortgage was assented to by the company's agents depends entirely upon the true meaning and interpretation of the loss payable indorsement placed by them upon the policy. That indorsement reads: "Subject to all the conditions of this policy, loss, if any, payable to G. B. Dodge and A. M. Stevenson as their interest may appear." Could the insurance company, consistently with a purpose to insist upon and enforce all the conditions of the policy, agree to pay the loss, if any, to Dodge and Stevenson as their interest may appear? If it could, that is plainly what was done. The indorsement does not mention the chattel mortgage, it does not describe Dodge and Stevenson as chattel mortgagees, and it does not show that the attention of the parties was directed to the chattel mortgage. All this is conceded, and the contention of the plaintiffs, as stated in the brief of counsel, is this:

"The language of the indorsement is absolutely broad and embracive. The language is, 'As their interest may appear.' This is limited only by their ability to make their interest appear. Whatever interest they may be able, by proper proofs and in the proper manner, to make it appear that they

possess, necessarily comes within the meaning and terms of this indorsement. The greater includes the less, and if, at the time of the loss, their interest is made to appear to be that of mortgagees, such interest is necessarily included in the terms of this indorsement."

Doubtless this would be a proper interpretation of the words "as their interest may appear," if they stood alone or were controlling. They are plainly prospective, and refer, not to an interest existing at the time when the indorsement was written, but to such interest as may appear at the time of the loss, if any, without regard to the character of the interest, or the time when it may have arisen. The interest referred to is not an interest in the property insured, but is an interest in the payment of the loss, whether predicated upon an interest in the property or otherwise. In this respect the terms of the indorsement may be properly said to be "broad and embracive."

But the question under consideration is not solved by merely ascertaining the meaning of the words "as their interest may appear." They do not stand alone, and are not controlling. By the plain terms of the indorsement the consent to pay the loss to Dodge and Stevenson was made "subject to all the conditions" of the policy. This qualifying clause means that the consent was given upon the express condition that the conditions of the policy were not thereby abrogated or waived, but that they should have effect and be respected in like manner as if the indorsement had not been made. It means that a loss, to be payable to Dodge and Stevenson under the indorsement, must be one which, under the conditions of the policy, would be payable to the insured, and that whatever, under those conditions, would defeat the insured's right to payment in the absence of the indorsement, will equally defeat it in the presence of the indorsement. True, if the terms of the indorsement were conflicting—that is, if the appointment of Dodge and Stevenson to receive payment of the insured's loss, if any, was necessarily inconsistent with any condition in the policy—a familiar rule would require that, to the extent of the inconsistency, controlling effect should be given to that appointment, rather than to the qualifying clause. But is there any such conflict? If not, effect must be given to both the appointment and the qualifying clause, if it can reasonably be done, as it is not permissible to assume that any of the words of the indorsement were employed carelessly, or to no purpose. In respect of this the contention of the plaintiffs is that by the use of the words "as their interest may appear" it was assumed and recognized that Dodge and Stevenson had or might have an interest in the payment of the loss, if any should occur, and therefore that consent was impliedly given to any act by which an interest had been or should be acquired, even though it be one which otherwise would avoid the policy; in other words, that consent was impliedly given to any sale of the property insured which had been or should be made to Dodge and Stevenson, and to any chattel mortgage of the personalty which had been or should be given to them, and to any sale to them of the property which had been or should be made on legal process, and to any assignment to them

of the policy which had been or should be made. It is not easily conceivable that an indorsement which so distinctly declared a purpose to insist upon and enforce "all the conditions" of the policy was really intended to abrogate or waive so many of them. Moreover, it was not essential that any act violative of the conditions of the policy should have occurred or should occur to give Dodge and Stevenson an interest in the payment of the loss. They were creditors of the insured and mortgagees of the insured realty, both of which were consistent with the conditions of the policy, and either of which gave them a sufficient interest in the payment of any loss sustained by the insured to support the loss payable indorsement. There was therefore no necessary inconsistency between the assumption and recognition in the indorsement that Dodge and Stevenson had or might have an interest in the payment of such loss, and the express reservation to the company of the right to insist upon and enforce all the conditions of the policy. In these circumstances it cannot be reasonably said that the words "as their interest may appear" impliedly gave consent to any act violative of the conditions of the policy. A more reasonable view of the office performed by these words is that they define the contingency in which and the extent to which—consistently with the conditions of the policy—the insured's loss, if any should be sustained, was intended to be made payable to Dodge and Stevenson. Without these words in the indorsement, the whole loss would be payable absolutely to Dodge and Stevenson without any showing of an interest on their part or of its extent. They are words of restriction, not of enlargement.

The purpose and effect of loss payable indorsements upon policies of insurance have frequently been considered in the courts, and, in the absence of some provision to the contrary, it has been quite uniformly held that such an indorsement is a mere appointment of a payee to receive payment of the insured's loss, and does not create a new contract of insurance with the payee, or abrogate or waive any condition of the policy.

Bates v. Equitable Insurance Co., 10 Wall. 33, 19 L. Ed. 882, was an action upon a policy of fire insurance containing a provision that, if the property insured should be sold or conveyed, or the policy be assigned, without the consent of the company, the policy should become void. Philbrick, the insured, sold the property to Bates, and wrote upon the policy, "Payable, in case of loss, to E. C. Bates." The company then caused an indorsement to be written under that of Philbrick, saying, "Consent is hereby given to the above indorsement." The defense was that the sale of the property was without the consent of the company, and avoided the policy, and the plaintiff insisted that notice of the sale and consent thereto was implied by the indorsements. It was said by Mr. Justice Miller, who delivered the opinion of the court:

"If Philbrick could not, in law or in fact, have directed the payment of the loss, if one should occur to him, as owner of the property, to another party, with the consent of the company, then it would be a reasonable inference that the indorsement made by him implied a sale of his interest. But if he could

make, with the consent of the company, a valid appointment that any loss covered by the policy should be paid to a third person, though he remained the owner of the goods, and the loss was his loss, then the indorsement of Philbrick does not necessarily convey the idea of a sale, nor the consent of the company imply a consent to a sale. Now, it is a well-known and frequent thing in insurance business for a person to insure his life or his property, and either in the policy itself, or by indorsement at the time it is made, or by subsequent indorsement, to which the consent of the company is generally required, to direct the loss to be paid to some third party. And this is done in language similar, if not identical with that used in this case. It is a mode of appointing that the loss of the party insured shall be paid by the company to such third person. This transaction is a very common mode of furnishing a species of security by a debtor to his creditor, who may be willing to trust to the debtor's honesty, his skill and success in trade, but who requires indemnity against such accidents as loss by fire or the perils of navigation. The property of the debtor at risk being thus insured for the benefit of the creditor, gives him this indemnity. In the face of this frequent use of the two indorsements on the policy, it cannot be held that they imply of themselves a knowledge of the sale or a consent to insure the purchaser."

In Ermentrout v. American Fire Ins. Co., 60 Minn. 418, 62 N. W. 543, it was said:

"In cases where the loss is 'payable to the mortgagee' it is an absolute appointment of the mortgagee as payee of the whole loss, and a direction to pay it to him. * * * But, where the policy provides that the loss shall be payable to the mortgagee, or, as in this case, to his assignee, 'as his interest may appear,' it is neither an assignment of the policy nor an absolute appointment of the mortgagee as payee of the whole or any part of the loss, but a limited and conditional appointment to receive payment of the loss to the extent of his interest, if any is made to appear."

In Brunswick Savings Institution v. Commercial Union Insurance Co., 68 Me. 313, 28 Am. Rep. 56, it was said:

"The clause in the policy, 'payable in case of loss to the Brunswick Savings Institution to the amount of mortgage held by them,' is not an insurance of the plaintiffs' interest in the property, nor an assignment of the policy to the plaintiffs. It is merely a contingent order or stipulation, assented to by the defendants, for the payment of the loss of the assured, if any, to the plaintiffs. It gives the plaintiffs the same right to recover that the assured would have if no such clause had been inserted in the policy. Any violation of the conditions and stipulations of the policy which would defeat the right of the assured to recover upon it will defeat the right of the plaintiffs."

In Wunderlich v. Palatine Fire Insurance Co., 104 Wis. 395, 402, 80 N. W. 471, it was said of a provision that the loss should be payable to a third person as his interest might appear:

"The rights of a claimant under this familiar clause, where the title and ownership of the property remains in the assured, are no longer open to doubt or debate in this state. They were settled by Chandos v. Am. F. Ins. Co., 84 Wis. 184, 54 N. W. 390, 19 L. R. A. 321; Carberry v. German Ins. Co., 86 Wis. 323, 56 N. W. 920; and Williamson v. Mich. F. & M. Ins. Co., 86 Wis. 393, 57 N. W. 46, 39 Am. St. Rep. 906. The contract is with the assured. To him alone is the insurer liable, and upon his acts will that liability depend. The claimant under such a provision is not an assignee of the policy, so as to hold an independent right of recovery, but a mere appointee to receive the whole or a part of the money which the assured is entitled to recover, but to receive it under and in the right of the assured."

Scania Insurance Co. v. Johnson, 22 Colo. 476, 45 Pac. 431, was an action on a policy of fire insurance containing a provision declaring

the policy void if the property insured be sold without the consent of the company indorsed on the policy, and containing the further provision: "Loss, if any, payable to Mrs. H. Johnson as her interest may appear." When the policy was issued, Mrs. Johnson held a mortgage upon the property, and subsequently the insured unconditionally conveyed the property to her, but no consent to the sale was indorsed on the policy. It was said by Mr. Justice Campbell, who delivered the opinion of the court:

"It was the mortgagor's property and her interest therein which were insured, and the effect of the language quoted was merely an appointment of Mrs. Johnson to receive the amount of any loss that might occur. Any act of the mortgagor in violation of the terms of the policy against a sale thereof would defeat not only the right of the mortgagor to a recovery, but also a recovery by the mortgagee. * * * The sale of this property by the assured without the consent of the company was a violation of the conditions of the contract which, by an express provision, invalidated the policy. At the time of the fire the mortgagor had parted with all of her interest in the property, and had transferred the title. She therefore suffered no loss as the result of the fire, and, as the mortgagor cannot recover, neither can the mortgagee."

Delaware Insurance Co. v. Greer, 57 C. C. A. 188, 190, 191, 193, 120 Fed. 916, 918, 919, 921, 61 L. R. A. 137, was an action upon a policy of fire insurance containing a provision to the effect that, unless otherwise provided by agreement indorsed upon the policy or added thereto, the entire policy should be void if, with the knowledge of the insured, foreclosure proceedings be commenced, or notice be given of sale of any property covered by the policy by virtue of any mortgage or trust deed. An indorsement was written upon the policy making the loss, if any, payable to certain mortgagees, as their interest might appear. Proceedings to foreclose these mortgages were thereafter commenced with the knowledge of the insured, but consent of the insurance company thereto was not obtained. The defense to the action upon the policy was that the commencement of the foreclosure proceedings with the knowledge of the insured avoided the policy, and the plaintiffs contended that by consenting to make the loss, if any, payable to the mortgagees as their interest might appear the company had impliedly consented to whatever was essential to make the mortgages effective, and had thus waived the condition against foreclosure proceedings. Judge Sanborn, in delivering the unanimous opinion of the court, said:

"They argue that a mortgage is an incident of a debt; that the right to foreclose is an attribute of a mortgage; that, when the insurance company agreed that the loss should be paid to the mortgagees as their interest might appear, they thereby consented to the exercise by them of their right to foreclose; and from these premises they draw the conclusion that the mortgagees were thereby excepted from the provision of the policy that it should be void if foreclosure proceedings were commenced with the knowledge of the insured. The soundness of the premises upon which counsel base their contention is conceded, but the alleged conclusion does not follow. On the other hand, the plain reading of the clauses of the policy is, and the evident intention of the parties to the contract was, in the first place, to concede the right of the mortgagees to foreclose their mortgage, and in view of this situation to clearly provide what the rights and relations of the parties should be if the

mortgagees exercised their right to commence their proceedings to foreclose. The parties to the policy, in other words, recognized the right of the mortgagees to enforce the terms of their mortgage, and provided in plain terms that if they commenced proceedings for that purpose, and these proceedings came to the knowledge of the insured, the policy should be void. * * * The true construction of the clause, 'Loss, if any, payable to ———, mortgagee, as his interest may appear,' or of words of similar import, when attached to policies of fire insurance, is, and has been for more than 40 years, that the mortgagee is thereby made the simple appointee of the mortgagor, and that his indemnity is at the risk of the acts and omissions of the latter which would avoid, terminate, or affect the mortgagor's insurance under the original policy. * * * The result is that, unless otherwise provided by agreement indorsed on or added to the policy, the insurance of a mortgagee under the customary clause, which reads, in substance, 'Loss, if any, payable to ———, mortgagee, as his interest may appear,' ceases if foreclosure proceedings are instituted against the mortgagor, and the latter knows that they have been commenced, at any time before the fire which causes the loss occurs."

The conclusion, enforced by the plain terms of the policy and of the indorsement, and by settled rules of decision, is that the purpose and effect of the indorsement was to make Dodge and Stevenson the simple appointees of the insured to receive payment of any loss payable to the insured under the original policy, and to receive it not absolutely, but to the extent of any interest which at the time of the loss they might have in such payment, consistently with the due observance by the insured of all the conditions of the policy; that the indorsement did not in terms or by implication consent to the incumbrance created by the chattel mortgage, and that in consequence the policy was avoided by that incumbrance.

Nor is there anything in the opinion in Hagan v. Scottish Insurance Co., 186 U. S. 423, 22 Sup. Ct. 862, 46 L. Ed. 1229, which is inconsistent with this conclusion or with the cases in the Supreme Court to which reference has been made. That was a libel in admiralty upon a policy of marine fire insurance, of which the court said:

"It is to be observed, in the first place, that the policy in question covers property on the water, viz., a tugboat; yet the printed portion of the policy shows that it was intended generally to be used for insuring property on land. A marine policy was made out upon blanks not intended for that kind of insurance. Consequently many of the printed provisions were wholly inapplicable to insurance of property on the water."

In the printed portion was a condition declaring the policy void if, without the consent of the company indorsed upon or added to the policy, the interest of the insured be other than unconditional and sole ownership, or if there be any change in interest or title by the voluntary act of the insured; and in the written portion the insurance was made to run to "Peter Hagan and Company for account of whom it may concern." Before the loss, Hagan, who obtained the policy, sold an interest in the tugboat to another, who held that interest at the time of the fire. The consent of the insurance company to the change in ownership was not obtained. In denying the contention of the company that the sale avoided the

policy, the court referred to the fact that in marine insurance the words "for account of whom it may concern" are used to designate not merely the person taking out the policy, or the owner at the time it is issued, but any person having an insurable interest in the property at the time of the loss who adopts the insurance; and it was said:

"The decision of this case turns upon the significance to be given to the written provision of the policy which provides for insuring 'Peter Hagan and Company for account of whom it may concern.' * * * Where a marine policy is thus taken out upon a blank policy providing by many of its terms for insurance on property or goods on land, it becomes doubly important to keep, and apply with strictness, the rule that the written shall prevail over the printed portion of a policy, as in such case the written, even more clearly than usual, will evidence the real contract between the parties. Courts will not endeavor to limit what would otherwise be the meaning and effect of the written language by resorting to some printed provision in the policy, which, if applied, would change such meaning and render the written portion substantially useless and without application. * * * If the policy were to become void in case of a transfer of all or any part of the interest of the person taking out the insurance unless the company were notified and provided by agreement indorsed on the policy for such change, we do not see that any alteration in its terms and meaning was accomplished by the insertion of the phrase in question. By the interpretation contended for by the company, it would have the same right, if the written provision were contained therein, to refuse to otherwise provide by agreement for the transfer of an interest that it would have if such provision were stricken out, and the terms of the policy would in truth be unaltered by the insertion of that provision. We think this would be a totally different result from that contemplated by the parties. The words 'on account of whom it may concern' do not refer to those interested in the policy simply at the time it is taken out. The terms refer to the future. It is not a question of the persons concerned when it is taken out, but of those who may be concerned when the loss may occur, and who were within the contemplation of him who took out the insurance at the time that he did so. It is on account of those who in the future, at the time of the happening of a loss, have the insurable interest and in regard to whom the policy will be applied. * * * We think the written portion is inconsistent with the printed condition as to change of interest and as to sole ownership, and, there being such inconsistency, the written portion must be held to cover the assignee of a part interest in the tug, as intended at the time by the party taking out the insurance."

The distinguishing features of that case are manifest. Two may deserve special mention at this time. The written portion of the policy did not contain any language evincing a purpose to insist upon and enforce all the conditions of the policy, as does the indorsement here under consideration. The written and printed portions of that policy were so conflicting that a material part of the written portion would be altogether inoperative if effect were given to the printed portion. There is no such conflict in the present case.

The judgment is affirmed.

HOOK, Circuit Judge (dissenting). The case in brief is this: The reduction company, as the owner of certain real and personal property comprising a chlorination mill and consisting of buildings, machinery, and supplies for the operation of the same, procured from the insurance company a policy insuring both the realty

and personalty against loss by fire. The policy contained this clause:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the subject of insurance be personal property and be or become incumbered by a chattel mortgage."

The agents of the insurance company had no authority to waive this provision, but they did have full authority to assent to a mortgage of the insured personalty by means of written indorsement on or addition to the policy. A month after the insurance was procured, the insured, being indebted to Dodge and Stevenson, gave them as security two mortgages upon the mill property, one upon the realty, which required no assent to preserve the validity of the policy, and the other upon the personalty. Thereupon, at the request of the insured and Dodge and Stevenson, the agents of the insurance company made this indorsement upon the policy: "Subject to all the conditions of this policy, loss, if any, payable to G. B. Dodge and A. M. Stevenson, as their interest may appear." It was positively averred in the complaint to which a demurrer was sustained that the insurance company consented to both mortgages. The insured property was destroyed by fire, proofs of loss were furnished, the authorized representatives of the parties and of other insuring companies met and adjusted the loss, but the defendant company refused to pay. My associates hold that a complaint setting forth these facts does not state a cause of action, and that the plaintiffs may not, by proofs, show what was actually intended by the indorsement upon the policy.

The insurance company contends—and its contention is sustained—that the general averment in the complaint of its consent is referable to the particular indorsement upon the policy by its agents, and that the indorsement cannot be construed as a consent to the chattel mortgage. Out of the latter part of this contention arise the principal questions in the case. In the cases cited in the foregoing opinion (Carpenter v. Insurance Co., 16 Pet. 495, 10 L. Ed. 1044; Northern Assurance Co. v. Building Ass'n, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213; Forbes v. Insurance Co., 9 Cush. 470; Worcester Bank v. Insurance Co., 11 Cush. 265, 59 Am. Dec. 145; Walsh v. Insurance Co., 73 N. Y. 5) there was an entire failure to make indorsements upon the policies, as was required by their terms, and it was sought to supply the omission by oral testimony. The doctrine of these cases is unassailable, but it has merely an indirect bearing upon the case at bar. Here an indorsement was requested. It was made by the authorized agents, and the questions are: What is to be done with it? How should it be construed? If it is ambiguous in its application, is oral testimony admissible to explain it?

In Bates v. Insurance Co., 10 Wall. 33, 19 L. Ed. 882, also cited in the foregoing opinion, the policy contained a clause that, if the insured property be sold or conveyed, or if the policy itself should be assigned, without the consent of the company, the risk

should cease, and the policy become void. The indorsement made and consented to was, "Payable in case of loss to E. C. Bates." It was held that this indorsement indicated neither a sale or conveyance of the insured property nor an assignment of the policy. Justice Miller, in delivering the opinion of the court, said:

"If it could be shown that it had been the course of dealing between these particular parties to recognize the indorsement of the party first assured as evidence of a sale, and the indorsement of the company as a consent to the sale, or if it could be shown that by custom and usage in any particular place these indorsements were so treated, the case might be different; but, in the absence of such usage or custom, we can see in these indorsements nothing more than the direction of Philbrick and the consent of the company that any loss sustained by Philbrick, covered by that policy, should be paid to Bates. As Philbrick did not have any interest in the goods when the fire occurred, he sustained no loss, and the policy covered none."

This case, so far from militating in any degree against the contention of Dodge and Stevenson and the insured is, on the contrary, helpful in its bearing, in that, as applied to the case before us, it tends to limit the indorsement to the scope and purport averred to have been actually within the contemplation of all of the parties. It is not claimed here that the insured property was sold, or that the policy was assigned. On the contrary, it was averred that the insured property of both classes was mortgaged, that the company actually consented thereto; and it is contended that the indorsement which was made is fairly and reasonably calculated to so signify. Scania Insurance Co. v. Johnson, 22 Colo. 476, 45 Pac. 431, is a case like Bates v. Insurance Company; and in Delaware Insurance Co. v. Greer, 120 Fed. 916, 57 C. C. A. 188, 61 L. R. A. 137, it was merely held that an indorsement making loss payable to a mortgagee as his interest might appear. did not excuse compliance with another and additional provision that the policy should be void if, with knowledge of the insured, foreclosure proceedings be commenced, etc., unless otherwise provided by agreement indorsed on the policy.

In approaching the questions arising in this case it should be borne in mind that the settled rule of construction is that the language of a policy of insurance is the language of the company, and this includes indorsements made by its agents, and it is both reasonable and just that its own words should be construed most strongly against itself. If the policy is so framed, and an indorsement thereon is so worded, as to leave the meaning doubtful or ambiguous, or when the phraseology employed is calculated to mislead the insured, the courts will lean against the construction which would limit or discharge the liability of the company. National Bank v. Insurance Co., 95 U. S. 673, 24 L. Ed. 563; Grace v. Insurance Co., 109 U. S. 278, 282, 3 Sup. Ct. 207, 27 L. Ed. 932; Moulor v. Insurance Co., 111 U. S. 335, 341, 4 Sup. Ct. 466, 28 L. Ed. 447; Travellers' Ins. Co. v. McConkey, 127 U. S. 661, 666, 8 Sup. Ct. 1360, 32 L. Ed. 308; Thompson v. Ins. Co., 136 U. S. 287, 297, 10 Sup. Ct. 1019, 34 L. Ed. 408; London Assurance v. Companhia, etc., 167 U. S. 149, 159, 17 Sup. Ct. 785, 42 L. Ed. 113; Liverpool,

etc., Ins. Co. v. Kearney, 180 U. S. 132, 136, 21 Sup. Ct. 326, 45 L. Ed. 460; McMaster v. Life Ins. Co., 183 U. S. 25, 40, 22 Sup. Ct. 10, 46 L. Ed. 64; Texas & Pacific Ry. Co. v. Reiss, 183 U. S. 621, 626, 22 Sup. Ct. 253, 46 L. Ed. 358; Royal Ins. Co. v. Martin, 192 U. S. 149, 162, 24 Sup. Ct. 247, 48 L. Ed. 385.

In American Surety Co. v. Pauly, 170 U. S. 133, 144, 18 Sup. Ct. 552, 42 L. Ed. 977, it was said:

"If, looking at all its provisions, the bond is fairly and reasonably susceptible of two constructions, one favorable to the bank and the other favorable to the surety company, the former, if consistent with the objects for which the bond was given, must be adopted; and this for the reason that the instrument which the court is invited to interpret was drawn by the attorneys, officers, or agents of the surety company. This is a well-established rule in the law of insurance."

In Liverpool, etc., Insurance Co. v. Kearney, 94 Fed. 314, 36 C. C. A. 265, this court, speaking through Judge Thayer, held that the terms of policies of insurance should receive a reasonable, not a strictly literal, construction. In affirming this case (180 U. S. 138, 21 Sup. Ct. 326, 45 L. Ed. 460) the Supreme Court said:

"A literal interpretation of the contracts of insurance might sustain a contrary view, but the law does not require such an interpretation. In so holding the court does not make for the parties a contract which they did not make for themselves. It only interprets the contract so as to do no violence to the words used, and yet to meet the ends of justice."

In Palatine Insurance Co. v. Ewing, 92 Fed. 111, 114, 34 C. C. A. 236, in discussing the effect of a "rider" upon the provisions of the body of a policy, Judge Severens, of the Sixth Circuit, said:

"But if this conclusion were not so clear as it seems to us to be, and were only a permissible one, there are several established rules of construction applicable to the subject which concur in inducing the same result. One of those rules is that forfeitures are not favored in law, and the courts will seek to find, if fairly possible, such a construction of the contracts of parties as will relieve them from the inequitable consequences arising therefrom. * * * Another rule, which is especially, but not solely, applicable to insurance contracts, is that, when the meaning of the instrument, taken as a whole, is doubtful, its several provisions should be construed favorably to the party to whom the undertaking is made, and most strongly against the party in whose interest the provisions are introduced. * * * Still another rule is that, where a special provision is added to the formal contract, the special provision will be taken to dominate the formal part, upon the principle that it more surely expresses the final purpose of the parties."

In Hoffman v. Ætna Insurance Co., 32 N. Y. 405, 413, 88 Am. Dec. 337, the court, after observing that the terms of the policy that was being considered were not such as would naturally suggest even a query in the minds of the assured whether a transfer of interest as between themselves would work a forfeiture, said:

"It is a rule of law as well as of ethics that, where the language of a promisor may be understood in more senses than one, it is to be interpreted in the sense in which he had reason to suppose it was understood by the promisee. It is also a familiar rule of law that, if it be left in doubt, in view of the general tenor of the instrument and the relations of the contracting parties, whether given words were used in an enlarged or a restricted sense, other things being equal, that construction should be adopted which is most beneficial to the promisee."

In Utley v. Donaldson, 94 U. S. 46, 24 L. Ed. 54, the Supreme Court approved of the following from the case last mentioned:

"Every intendment is to be made against the construction of a contract under which it would operate as a snare."

As Lord St. Leonards observed in Anderson v. Fitzgerald, 4 H. L. Cas. 510, a policy of insurance "ought to be framed with such deliberate care that no form of expression by which, on the one hand, the party assured can be caught, or by which, on the other, the company can be cheated, shall be found upon the face of it."

Such instruments are addressed primarily not to the court, but to the comprehension of men who presumably are of average intelligence, and who are not especially skilled in the technicalities of language. It is not meant by this that there is room for construction when plain and unequivocal language is employed, or that the ignorant and careless may be assisted at the expense of an insurance company by subtle distinctions which do not pertain to the substance of things. On the other hand, courts should not be astute to discover grounds for forfeiture that would not occur to men of ordinary intelligence whose minds are alert for the proper protection of their interests. One extreme is as much to be avoided as the other.

The discovery of the intent is the cardinal rule of construction, and in aid thereof courts should, as much as possible, place themselves in the position of the contracting parties, and thereby endeavor to regard the writing in the same light as those who made it.

In Scott v. United States, 12 Wall. 443, 444, 20 L. Ed. 438, a case involving a contract for transportation, the court said:

"In cases like this it is the duty of the court to assume the standpoint occupied by the parties when the contract was made, to let in the light of the surrounding circumstances, to see as the parties saw, and to think as they must have thought in assenting to the stipulations by which they were bound. This process is always effective. When the terms employed are doubtful or obscure, there is no surer guide to their intent and meaning."

Again, another rule is that an exception to the liability imposed by the contract of insurance is not to be liberally construed. Canton Ins. Office v. Woodside, 90 Fed. 301, 33 C. C. A. 63.

Again, it is the settled rule that if in the application of the provisions of a policy of insurance to the subject-matter thereof an ambiguity arises, and a doubt as to what the parties intended, parol evidence is admissible for the ascertainment of their real intention. In summing up the principles announced in Northern Assurance Co. v. Building Ass'n, 183 U. S. 308, 361, 22 Sup. Ct. 133, 46 L. Ed. 213, the court recognized this modification of the principal doctrine of that case; and it was also recognized in the excerpts from some of the cases which were cited. Sheldon v. Insurance Co., 22 Conn. 235, 58 Am. Dec. 420; New York Ins. Co. v. Thomas, 3 Johns. Cas. 1; Franklin Fire Ins. Co. v. Martin, 40 N. J. Law, 568, 29 Am. Rep. 271.

In Fogg v. Insurance Co., 10 Cush. 337, Chief Justice Shaw said:

"When words are doubtful, it is competent for parties to go into proof of the relation in which the parties stood to each other, the acts mutually done

by them, and generally the surrounding circumstances, in order the better to understand the language used by them, and thus ascertain their intent; and under this rule the evidence was admitted."

Turning, then, in the light of the foregoing principles, to the provision of the policy in suit that it should be void in case the subject of insurance was personal property and became incumbered by a chattel mortgage without the consent of the company indorsed thereon, and to the language of the indorsement itself, the inquiry which first suggests itself is as to the scope and purport of the operating clause of the indorsement, "Loss, if any, payable to G. B. Dodge and A. M. Stevenson as their interest may appear." It is sufficiently shown by the authorities cited in the foregoing opinion that its meaning could not be that the insured property had been sold to Dodge and Stevenson, or that the policy of insurance had been assigned to them (see, also, Minturn v. Insurance Co., 76 Mass. 501; Franklin Savings Inst. v. Insurance Co., 119 Mass. 240; Griswell v. Insurance Co., 70 Mo. 654; Froehly v. Insurance Co., 32 Mo. App. 302); and therefore, as there was no sale of the property, and no assignment of the policy, that matter may be dismissed from consideration.

This leaves remaining the inference either (1) that Dodge and Stevenson were general creditors of the insured, or (2) that they held a mortgage or other lien upon the insured property. It will not be profitable to discuss the former at length. It is sufficient to say that such indorsements upon fire policies in favor of mere general creditors without lien upon or interest in the property are not frequent, and that the one before us plainly indicates that Dodge and Stevenson were something more than general creditors. It is a matter of common knowledge that among those having to do with fire insurance either as agents of insurers or as insured such a loss payable clause almost invariably signifies that the persons named have a mortgage or other lien upon the insured property either existing or in immediate contemplation, but that the amount thereof is subject to fluctuation in the future, or may be fully discharged before loss under the policy. Hence the words "as their interest may appear." The term "interest," as ordinarily used in connection with fire insurance, signifies some right that has relation to property, and it would seem to be a misinterpretation of language to say that the interest referred to in the indorsement was solely an interest created by the indorsement itself. But assuming that it is a possibility that the indorsement might mean that Dodge and Stevenson were mere general creditors without lien, the sufficient answer is that the rights of litigants ought not to be determined by general rules of construction applied to possibilities, when the qualifications of those rules and the probabilities of the case lead unerringly to a different result.

But, after all, this is not a vital, or even a very important, matter in the case, as I view it, for it may be assumed without detriment to the position of the insured and Dodge and Stevenson that such an indorsement is broad enough to include general creditors as well as mortgagees. Under all the authorities, and the usages

and customs of the business, and by all rational rules of interpretation the operating clause of the indorsement, if standing alone, would have embraced both mortgages of Dodge and Stevenson—the one upon the personalty as well as the one upon the realty. I do not understand that this is disputed. The words were sufficiently comprehensive for that purpose. They were such as business men would naturally employ, and be satisfied with as evidencing their intention, and as complying with the requirements of the policy. But it is said that by reason of the prefixing of the qualifying words, "Subject to all the conditions of this policy," the specific subject-matter of the operating clause was invaded and so circumscribed that a condition of the policy against a chattel mortgage not consented to was broken, and the policy thereby became void. To this I do not assent. The operating clause of the indorsement was directed to a specific subject-matter among all those contained in the policy, and its obvious and apparent effect was to give consent to the mortgages of Dodge and Stevenson. It is but fair to say that it is more than probable that the parties so intended it. The qualifying clause was a general reference to all the stipulations of the policy which determined or affected the responsibility of the company, and there were about 70 of them, from those pertaining to the management of the insured premises down to those governing the ascertainment and adjustment of a loss. The former was immediately significant and intelligible, and would naturally be at once recognized as being fully adequate for the safeguarding of the rights of the insured and his mortgagees. The operation of the latter was at the best indirect, and implied relation to many subjects and conditions. The construction desired by the insurance company would have required of the insured and Dodge and Stevenson a weighing and an accurate conception of all the consistencies and inconsistencies between the words of the indorsement and the many stipulations in the body of the policy itself, and this in the face of the fact that there were plain words before them, which seemed sufficient for their protection. It would fatally affect them with a hidden and an indirect sense, contrary to one that was of plain and direct import. May it not reasonably be said that a man of ordinary intelligence, knowing the terms of his policy—and it is to such that these matters are first addressed—would naturally have assumed, under the circumstances of this case, that the existence of the chattel mortgage was duly recognized by the indorsement, and that the general reference to all of the conditions of the policy meant simply those conditions that related to other matters which had a bearing upon the risk? Courts themselves not infrequently apply to the construction of the solemn enactments of Legislatures a rule based upon an analogous course of reasoning. And from the opposite standpoint, may it not reasonably be said that in employing the words in question it was the sole purpose of the insurance agents to make sure and to inform the mortgagees that there was no contract of indemnity with them, but that it was still confined to the original parties to the instrument, and that the integrity of the

policy and the rights of Dodge and Stevenson arising from their mortgages and the consent of the company thereto were nevertheless subject to be affected or wholly defeated by the acts or omissions of the insured? If, upon placing ourselves as nearly as possible in the position of the insured and Dodge and Stevenson and the insurance agents, and regarding the words they used in the light of the known circumstances surrounding them, the above inquiries should be answered in the affirmative, then the actual intent of the parties has yielded to a rigid rule of strict construction.

Manufacturing concerns, reduction works, electric light, gas and water works, and the like, are almost always made up of both real and personal property, and mortgages and trust deeds given by their owners in many cases embrace the property of both classes. And I cannot escape the conviction that, having mortgaged both the realty and the personalty of their concerns, the great majority of such owners or their managers, men of intelligence and business affairs, cognizant of the stipulations of their policies of insurance, would, upon applying to the agents of the insuring companies, and fully advising them of the facts, be satisfied with the making of just such an indorsement as was made in this case, and would rest in full faith that their rights had been adequately protected. Suppose the indorsement before us had been: "Subject to all the conditions of this policy, loss, if any, payable to G. B. Dodge and A. M. Stevenson *mortgagees*, as their interest may appear." Logically the contention of the company would then have been that, since the term "mortgagees" might have related to the real estate mortgage, and not to that upon the personalty, the policy was void. It is unfortunate that such precision of thought and expression may not soon be expected in the usual conduct of business affairs. In my opinion, the construction sought by the insurance company is at variance with every rule to which attention has been directed. It contemplates that its own language, fairly open to a different view, be taken most favorably to itself. It seeks the strict application of a rule of law to a condition of fact created by the exclusion of every hypothesis which would make to a contrary conclusion, and avoids those other supplemental and qualifying rules which are equally as well settled. It does not seek the answer to the question which in the construction of contracts in writing should always be asked, "Viewed in the light of the surrounding circumstances as presented to them, what was the real intention of the parties"? The tendency to the unrestrained invasion of the clear terms of policies of insurance by oral testimony which was so destructive of the rights of the companies has been well checked by the decision of the Supreme Court in Northern Assurance Co. v. Building Ass'n, supra; but it seems to me that the present contention of the insurance company tends strongly to the other extreme, and that a rule is sought more rigid than that applied to other written contracts, or even that which obtains in cases involving statutes against frauds and perjuries.