### BATES *v.* EQUITABLE INSURANCE COMPANY.

1. A policy of insurance contained the usual covenant that if the property was sold the insurance ceased, unless the consent of the insurer was given in writing to the sale.

    *Held,* that an indorsement on the policy by the assured,

    "Payable, in case of loss, to E. C. Bates" (the plaintiff),

    and under this, the indorsement by the insurer that

    "Consent is hereby given to the above indorsement,"

    did not imply either a knowledge or consent to the *sale* of the goods insured.

2. Such indorsements are entirely consistent with the property in the goods remaining in the assured, and mean no more than that the loss of the *assured* shall be paid to the third party.

3. If such third party had really purchased the goods before the loss, then the party *assured* sustained no loss and the policy covered none, and no action could be sustained on it.

ERROR to the Circuit Court for Rhode Island; the case being this:

W. D. Philbrick being the owner of certain goods, got them insured by the Equitable Insurance Company of Providence. The policy contained a clause that if the property insured should be sold or conveyed, or if the policy should be assigned without the consent of the company, the risk should cease and the policy become void. It contained also provisions such as are cited below:

"And this company agree, that if the assured shall sell the aforesaid property, or any part thereof, before 'he expiration of this policy, a proportion of the premium received shall be repaid, upon receiving notice of such sale before a loss happens; . . . *or* this policy may be continued for the benefit of such purchaser, if this company give their consent thereto, to be evidenced by a certificate of the fact, or by indorsement on this policy."

Philbrick, the party insured, sold the goods during the life of the policy to one Edward C. Bates, and indorsed on the policy,

"*Payable, in case of loss, to E. C. Bates.*
                                        "W. D. PHILBRICK."

The policy, with this indorsement, was sent by a policy-broker to the insurance company, and one Frederick W. Arnold, the secretary of the company, placed under the above indorsement these words:

"*Consent is hereby given to the above indorsement.* EQUITABLE INSURANCE COMPANY.
                                  "FRED. W. ARNOLD, Secretary."

The goods having been destroyed by fire after the sale, and the indorsement by Arnold in behalf of the company, Bates, the owner of them, brought assumpsit on the policy. The company refused to pay on the ground that Philbrick had ceased to be owner before the loss occurred, and that the company had never consented to any change of owner-

ship in the property. And the question was whether on the facts, this defence ought to be sustained.

Arnold, the secretary of the company, swore that he had no knowledge of the sale, nor was there any evidence that any officer of the company had notice of it, unless it was to be implied from the request to give their consent to the indorsement made by Philbrick, and the consent so given.

The court below was of the opinion that on the case stated the plaintiff could not recover, and judgment having been entered accordingly, the record was brought here.

*Mr. Goodrich, for the plaintiff in error:*

The indorsement by Philbrick being absolute without reservation, and accompanied by delivery of the policy, is an assignment of his entire interest both in the instrument and in the property insured. The words are capable of this construction. It is indeed their natural construction. The indorsement on the policy operated like an indorsement on a note. It carries all the indorser's interest in the subject-matter. There is no proof that Philbrick did not intend to sell the property, and no ground, therefore, on which the defendants can restrain the practicable and natural interpretation. The certificate of the company which is found on this policy, and under Philbrick's assignment, is just such a certificate as the policy provides that the company shall give when "the policy is to be continued for the benefit of the purchaser," but such as it does not provide or contemplate shall be given in any other case. The company have therefore interpreted in the sense in which we say it was made, this indorsement of Philbrick's.*

*Messrs. W. H. Potter and A. H. Brown, contra.*

Mr. Justice MILLER delivered the opinion of the court.

One of the conditions of the policy was that if the property insured should be sold or conveyed, the risk assumed ceased,

---

* Hooper *v.* Hudson River Railroad, 17 New York Court of Appeals, 426-8.

and the policy became void; and there can be no doubt that, looking to both the provisions of a policy, such as this one contained, and which are cited in the statement of the case, it ceases to be binding when the assured parts with his interest in the property insured, unless the company be notified of the sale. When this is done before a loss happens, the company is bound to refund a part of the prepaid premium, to be apportioned in reference to the unexpired time for which the policy was given.

If, however, the purchaser and the assured ask it, and the company consent to it, the policy may continue for the benefit of the purchaser. This latter proposition is founded upon the knowledge of the sale, and upon the consent of the company to accept the purchaser as the party whose interest is insured, instead of the vendor who was originally insured.

As there is no evidence, outside of the two indorsements, already quoted from the policy,* that there was any consent to accept Bates, the purchaser, as the party whose interest was insured, and as the presumption, if there is one arising from those indorsements of a notice of sale, is not supported by anything else, it becomes important to determine what those indorsements imply on those two points.

If Philbrick could not, in law or in fact, have directed the payment of the loss, if one should occur to him, as owner of the property, to another party, with the consent of the company, then it would be a reasonable inference that the indorsement made by him implied a sale of his interest. But if he could make, with the consent of the company, a valid appointment that any loss covered by the policy should be paid to a third person, though he remained the owner of the goods, and the loss was his loss, then the indorsement of Philbrick does not necessarily convey the idea of a sale, nor the consent of the company imply a consent to a sale.

Now, it is a well known and frequent thing in insurance business, for a person to insure his life, or his property, and either in the policy itself, or by indorsement at the time it

---

* *Supra*, p. 34, REP.

is made, or by subsequent indorsement, to which the consent of the company is generally required, to direct the loss to be paid to some third party. And this is done in language similar, if not identical with that used in this case. It is a mode of appointing that the loss of the party insured shall be paid by the company to such third person. This transaction is a very common mode of furnishing a species of security by a debtor to his creditor, who may be willing to trust to the debtor's honesty, his skill and success in trade, but who requires indemnity against such accidents as loss by fire, or the perils of navigation. The property of the debtor at risk being thus insured for the benefit of the creditor, gives him this indemnity.

In the face of this frequent use of the two indorsements on the policy, it cannot be held that they imply of themselves a knowledge of the sale or a consent to insure the purchaser.

If it could be shown that it had been the course of dealing, between these particular parties, to recognize the indorsement of the party first assured as evidence of a sale, and the indorsement of the company as a consent to the sale; or if it could be shown that by custom and usage, in any particular place, these indorsements were so treated, the case might be different; but, in the absence of such usage or custom, we can see in these indorsements nothing more than the direction of Philbrick, and the consent of the company, that any loss sustained by Philbrick, covered by that policy, should be paid to Bates. As Philbrick did not have any interest in the goods when the fire occurred, he sustained no loss, and the policy covered none.

The analogy of the effect of such indorsements on promissory notes, in assigning the notes to the indorser, is very imperfect. In such case the sum mentioned in the note is payable absolutely, and without regard to the interest of the original payee in any other matter. It is all contained in the note whose contents, to use the language of the Judiciary Act, are thus made payable to the indorsee, and the indorser necessarily parts with his interest in the subject-matter of the contract.

These views are well supported by recently adjudged cases in this country.*

JUDGMENT AFFIRMED.

---

* Fogg *v.* Middlesex Manufacturing Co., 10 Cushing, 346; Hale *v.* M. & F. Ins. Co., 6 Gray, 169; Young *v.* Eagle Ins. Co., 14 Id. 153; Grosvenor *v.* Atlantic Ins. Co., 17 New York, 391; State Mutual Fire Ins. Co. *v.* Roberts, 31 Pennsylvania State, 438.