## COMMERCIAL UNION FIRE INS. CO. OF NEW YORK v. MARSHALL et al.*

(Circuit Court of Appeals, Sixth Circuit. April 6, 1927.)

Nos. 4734–4740, 4770–4773.

**1. Insurance ⟝582—Stipulation that loss should be payable to another as interest appeared held notice to and recognition by insurer of interest.**

Stipulation in fire insurance policy that loss should be payable to another as interest may appear *held* notice to and recognition by insurer of interest in property then or thereafter, and whatever it might be, and it was immaterial whether such interest was that of *chattel mortgagee* or owner of title, or of equitable lien, since, although important in shaping recovery, it did not affect validity of policy.

**2. Insurance ⟝582—Stipulation that loss should be payable to another as interest appeared should be interpreted in view of existing situation.**

Stipulation in fire insurance policy that loss should be payable to another as interest might appear must be interpreted in view of existing situation, of which both parties had knowledge.

**3. Insurance ⟝335(2)—Stipulation requiring insured to keep inventory must be interpreted with reference to usages of particular business.**

Stipulation in fire insurance policy requiring insured to keep inventories must be interpreted with reference to usages of particular business involved, since most perfect inventory which could be kept in one business might in another business be so vague as to be insufficient.

**4. Insurance ⟝335(2)—Requirement of fire policy for inventory held not to require specifying grades of lumber, in view of average grades.**

Where evidence showed that insured, in manufacturing lumber, relied on average grades of lumber being cut, stipulation in fire policy requiring inventory did not require that lists of quantity and sizes should specify grades.

**5. Insurance ⟝640(3)—Insurer need not plead limitation of liability as defense under distribution clause.**

Insurance company was not required to plead limitation of liability in accordance with distribution clause as a defense, since insured had duty of proving what property was destroyed and what insurance existed thereon.

**6. Insurance ⟝602—Insured held not entitled to statutory penalty, in Tennessee, where insurers prevailed in part and were justified in contesting action.**

Insured *held* not entitled to recover statutory penalty provided by Tennessee statute in case defense on policy was in bad faith, where insurance company prevailed as to 12 per cent. of controversy, and contest of policy was one which justified them in taking opinion of court of last resort.

*Certiorari denied 47 S. Ct. 769, 71 L. Ed. —.

In Error to the District Court of the United States for the Western District of Tennessee; Harry B. Anderson, Judge.

Separate actions by G. L. Marshall and others against the Commercial Union Fire Insurance Company of New York, against the Hartford Fire Insurance Company, against the Commercial Union Assurance Company of London, and against the Home Fire & Marine Insurance Company of California. From the judgments, both parties bring error. Affirmed.

R. Lee Bartels, of Memphis, Tenn., for plaintiff in error.

Thos. A. Evans, of Memphis, Tenn. (Sivley, Evans & McCadden, Perry Orr, and Drane Lester, all of Memphis, Tenn., on the brief), for defendants in error.

Before DENISON and DONAHUE, Circuit Judges, and WESTENHAVER, District Judge.

DENISON, Circuit Judge. Marshall and Neely owned and operated a sawmill in Mississippi. Dacus was a broker or dealer in manufactured lumber in Memphis. He made advances to the mill, to secure which advances lumber as cut was to be piled and marked for him. Pursuant to the contract, this gave him, at that stage, at least an equitable interest. The contract also provided that at frequent intervals bills of sale of the new lumber should be given to him to secure him for his advances. This was done. The lumber was insured with the companies above named. A portion was later burned, and these suits were brought to recover the loss. At the end of a jury trial, both parties moved for directed verdict, and asked no alternative instructions. The court directed verdicts for plaintiffs.

[1] The insurance policies contained the usual provision that they should be void if the interest of the insured be other than the sole and unconditional ownership, or if the property be or become incumbered by chattel mortgage, unless, in each case, otherwise provided by agreement on or in the policy. The policies on their face were made payable to Marshall and Neely, and covered lumber, "their own or held by them in trust or on commission, or sold, but not delivered," etc. They contained the further provision that "any loss * * * proven to be due to the assured under this policy shall be held payable to [Dacus], as interest may appear." In defense to the actions it was urged that the bills of sale constituted chattel mortgages, and that, in any event, Marshall and Neely were not the unconditional and sole owners.

Upon the undisputed evidence these defenses were rightly overruled. There is no occasion to consider the extent of the effect of the word phrase "their own or," etc.; plainly even this was an agreement in the policy that the insured were not the unconditional and sole owners, and it might here well be thought to be language selected by the parties for properly covering the true situation. However that might be, the stipulation that the loss should be payable to Dacus "as interest may appear," under the facts of this case, applied to his interest, whatever it was, and was notice to and recognition by the insurer of his interest in the property, then or thereafter, and whatever it might be. It becomes unnecessary to consider whether his interest was that of a chattel mortgagee, or of the owner of the title, or of the owner of an equitable lien. Those things might be important in shaping the recovery; they do not affect the validity of the policy.

It is argued that, since Dacus might have an interest in the policy as security for a debt, without having any interest in the insured property, this clause does not necessarily imply a mutual understanding that he did have such interest in the property. This, we think, is not the natural construction of the language used. An interest in the policy, or in the right of action thereon, as collateral security, would not only usually be nonexistent when the policy issued, and so could not be the subject of this reference, but no indorsement on the policy with reference to such an interest would have been required. It is to be supposed that this indorsement was put into the policy for a necessary purpose, and the only such purpose would be to preserve the policy against invalidity arising from outstanding unnamed interests in the insured property.

In holding that the effect of the loss payable clause was to consent to Dacus' interest in the property, whatever it might be at the time of the loss, we do not overlook the cases cited and said to establish the contrary rule. All but one of them hold merely that the mortgagee in such a policy is interested only as the appointee of the insured, and cannot recover unless the insured could. With such a clause as we have here, this is not to be disputed. With this one exception, none of the cases cited hold or suggest that an outstanding mortgage to the person named in this clause can itself be the mortgage which will be a breach of the condition and invalidate the policy. In each of the other cases, the invalidity was caused by some other breach.

This exception is Atlas Reduction Co. v.

New Zealand Co. (C. C. A. 8) 138 F. 497, 9 L. R. A. (N. S.) 433. It does not seem ever to have been cited and followed upon this point, unless in one District Court case. Its value as authority is, to say the least, weakened by the forceful dissenting opinion of Judge Hook. It is not necessary to decide between the two views expressed in that case, because, in the present case, all doubt is removed by the fact that the clause is found in a policy which insured the interest of Marshall and Neely described in general and indefinite terms, and because the fact of which Judge Hook thought the court might take judicial notice here expressly appeared, viz. that according to the usages and practices of the community and of these insurance companies, this phrase "as interest may appear" was understood to cover and include a chattel mortgage interest, and was the form of words in a printed rider regularly used by the insurance companies for covering and describing that kind of interest.

[2] It is also said that, although the effect of the loss payable clause might be to evidence an agreement as to the interest of Dacus existing at the time the policy issued, yet, whenever a later bill of sale was executed for a specific lot of lumber, that became a chattel mortgage not within the contemplation of such earlier agreement. This language, like other policy provisions, must be interpreted in view of the existing situation, of which both parties had knowledge. The lumber was being manufactured and piled and shipped under the provisions of the Dacus contract. At first, it was subject at least to a lien for the advances made against it. A little later, and from time to time, a particular lot was covered by a bill of sale to the same creditor and securing the same advances. The policy insured the lumber which was to come into existence from time to time, and pass through this course of treatment under the contract. It cannot be said, in any clear sense, that when the bills of sale were given the property thereby "became incumbered by a chattel mortgage." It always had been incumbered by a generally equivalent security for the same indebtedness.

[3, 4] It was also urged that there had been a breach of the condition which required the insured to keep inventories of their lumber, and it is said that the inventories which were kept did not show the grades, and hence were insufficient. Manifestly such a stipulation must be interpreted with reference to the usages of the particular business involved; the most perfect inventory which could be

kept in one business might in another business be so vague as to be insufficient. The proof shows that there were well-established log-run average grades of the lumber being cut for Dacus by this mill from a certain tract of timber; that the insured in all their dealings relied upon the existence of these average grades as applied to the whole yard; and that there was no doubt about the propriety of this application to the burned lumber. In this situation, the duty to keep inventories did not require that the lists of quantity and sizes should specify grades.

Marshall and Neely also bring error because they were allowed to recover only 88 per cent. of the face of the policies. This was because of the effect given by the trial court to the so-called distribution average clause, reading as follows: "It is a consideration of this contract that the amount insured hereunder shall attach at all times during the life of this policy, in each building, shed, and other structure and/or place, in that proportion of the total amount hereby insured that the value of the property covered by this policy in each such building, shed, other structure and/or place, shall bear to the value of all property insured hereby."

[5] The policy covered by blanket form the lumber in the mill yard and in the shipping yard at the railroad. The proofs tended to show, and the judge in directing the verdict had a right to assume, as he did, that at the time of the fire the mill yard held 88 per cent. and the shipping yard 12 per cent. of the total property covered. The property burned was in the mill yards only, but was of a value greater than the whole face of the policies. The plaintiffs' objection to this limitation of its recovery to the 88 per cent. figure was because the distribution average clause was not pleaded as a defense. Aside from all other questions, such pleading was not necessary, because this was not a defense. It did not even amount to such a reduction in plaintiffs' claim as would be affected by a coinsurance clause. It was plainly incumbent upon plaintiffs to prove what property was destroyed and what insurance existed upon it; and plaintiffs' own proofs show that there was no insurance in force upon the property burned, except to the extent of 88 per cent. of the face of each policy.

[6] Marshall and Neely also complain because they were not allowed to recover the 25 per cent. penalty which the statutes of Tennessee provide that the jury may award, in addition to the loss, when it finds that the defense was made in bad faith. Even if the Tennessee penalty statute applies to a Mis-

sissippi contract, and even if there had been any evidence tending to show bad faith in the defense, plaintiffs could not complain, in the face of their submission to the court of any issue of fact there might be, and his implied finding that there was no bad faith in the defense. However, there was no such evidence. Not only did defendants prevail as to 12 per cent. of the controversy, but their contest, based on the chattel mortgage theory, was plainly one which justified them in taking the opinion of the court of last resort. Columbia Nat. Life Ins. Co. v. Harrison (C. C. A. 6) 12 F.(2d) 986, 990.

No other assignments of error require attention. All the judgments are affirmed.