## FIREMEN'S INS. CO. v. BROOKS et al.

Circuit Court of Appeals, Sixth Circuit. May 7, 1929.

No. 5194.

F. Linton Martin, of Chattanooga, Tenn., and Theodore A. Hammond, of Atlanta, Ga. (Smith, Hammond & Smith, of Atlanta, Ga., and Miller, Miller & Martin, of Chattanooga, Tenn., on the brief), for appellant.

Joe V. Williams, of Chattanooga, Tenn. (Henson W. Schoolfield, of Chattanooga, Tenn., on the brief), for appellees.

Before DENISON and HICKENLOOPER, Circuit Judges, and NEVIN, District Judge.

DENISON, Circuit Judge. This appeal presents the final phase of the controversy, considered by this court in another aspect in 19 F.(2d) 277. By the decree then affirmed, the District Court, in equity, had ordered a reformation of the policy so as to make Mr. and Mrs. Brooks jointly the insured; and in a suit upon the policy, when so reformed, the plaintiffs had a jury verdict and a judgment for the full amount. The present appeal presents two substantial questions only: (1) Was the policy invalid because of the existence of an outstanding title in one Trimby? (2) Were plaintiffs in fatal default for lack of proofs of loss?

The property, located in Georgia, had belonged to Trimby; he sold it to Mrs. Woods; and she gave him back a deed to secure an unpaid portion of the purchase price; then she deeded the property to Mr. and Mrs. Brooks by ordinary warranty deed, and subject to the debt and "security deed" to Trimby; then the insurance policy was written. The policy contained the usual provision that "unless otherwise provided by agreement, indorsed hereon or added hereto," it should be invalid "if the interest of the insured be other than the unconditional and sole ownership," or if the insured building be "on ground not owned by the insured in fee simple." Precisely, the preliminary question is whether the deed to Trimby made him the owner, or whether it was a security leaving the ownership in the insured.

We do not find it necessary to decide this question, nor whether the validity of the policy, in this particular, should be determined by Georgia or by Tennessee law. For the purposes of this opinion, we assume that the Georgia statute and decisions control, and that, except for the matter to be mentioned, Trimby's outstanding interest would have invalidated the policy from the beginning. At the time the policy was issued, there was "indorsed thereon and added thereto" the customary loss payable clause, which read: "Any loss that may be ascertained and proven to be due the assured under the building items of this policy, shall be held payable to Thomas Trimby as interest may appear, subject, nevertheless, to all the terms and condi-

tions of this policy." The undisputed facts are that (under the legal theory which we assume) the insured owned the equity of redemption and thus had an insurable interest; that Trimby held the legal title under a conveyance which recited that it was given as security for a debt, and which, among other things, obligated the grantor to insure the buildings and to assign the insurance policy to Trimby as additional security for the debt; that, though Trimby held the legal title, he held it in trust for the insured, and his only beneficial or equitable interest was to the extent of his unpaid debt; and that the company consented that the proceeds in case of loss should be paid to Trimby "as interest may appear." Can the insurer then be heard to say that, because Trimby's interest turned out to be a temporary holding of the legal title, instead of any other kind of interest which he might have had in the property or proceeds, therefore it will not pay the loss to him or to any one else? It seems to us entirely plain that if the loss had been payable to Trimby "to the extent of his interest under a security deed," the necessary consent or agreement of the company must be inferred; and, if so, we see no reason why this recognition of Trimby's interest, whatever it may be, is not equally effective. We do not overlook the argument urged upon us that the "loss payable" clause is only an agreement to pay to Trimby what would otherwise have been payable to the insured, and that if, by reason of conditions in the policy, it was invalid in favor of the insured, it cannot be valid in favor of Trimby. This argument is convincing enough in the typical case, where the appointee is claiming rights which the insured never acquired, but it begs the question as applied to this case; for the question here is whether the company did not, as of the date of the policy, agree that the outstanding interest of Trimby should not affect the validity of the policy, if and when a claim arose in favor of the insured; and, if it did, then Trimby may well continue as to the proceeds the mere appointee of the insured, and neither has nor needs better right than they have. This theory was noticed by us and received some attention, but was passed without positive decision, in Commercial Union v. Marshall (C. C. A.) 18 F.(2d) 457. We there pointed out that, with one exception, no case cited held that, where the insurance company had agreed to pay the loss to some person "as his interest may appear," it could successfully claim that an interest in the insured property, which was outstanding in that person and which was in

fact the same interest which the loss payable clause was intended to protect, could be considered to be such an outstanding interest as would be a breach of the condition that the insured was the sole owner or the condition that there were no incumbrances. The one exception was the Atlas Reduction Co. v. New Zealand Ins. Co. Case (C. C. A.) 138 F. 497, 9 L. R. A. (N. S.) 433. We have studied that opinion as carefully as may be, and are constrained to think that the dissenting opinion of Judge Hook states the reasoning and the conclusions which are applicable to the facts of our present case. If there were no other consideration, the familiar rule that an ambiguity should be solved against the insurance company, the party which selected the language used, would be applicable; for it is, at least, not clear that the language used might not have been intended to refer to that very interest which Trimby in fact had in the property, and which he and his grantor had agreed should be insured by the grantor and by this policy for Trimby's benefit.

One distinction may be suggested, inherent in the facts of the Atlas Case. The loss payable clause was there added after the policy had been some time in force. There was a distinctly greater possibility that the insured might be using the policy as security in some way disconnected from the property, so that "interest" might mean interest in the proceeds only rather than interest in the property, than there could be in a case where the clause is simultaneous with the policy,— for the loss payable clause is the customary means of protecting a then existing interest in the property.

We conclude that the view we intimated in the Commercial Union v. Marshall case should be definitely adopted; and accordingly we hold that this policy was not vitiated by the Trimby deed. We know of nothing in either Georgia or Tennessee inconsistent with this conclusion.

The policy contained the usual provision, as a prerequisite to suit, that proofs of loss must be furnished within 60 days. They were not; but plaintiffs relied upon a waiver. Immediately after the fire, plaintiffs caused notice to be sent to the insurer, which at once sent an adjuster. He went to the scene of the fire, informed himself generally as to the situation, discussed the matter with the insured, and offered to advise the company to pay in settlement less than the full amount. There was little, if any, material information which the proofs of loss would have furnished which the adjuster did not acquire. Brooks testified that as they parted he asked

the adjuster whether there was anything more that should be done in the way of furnishing proofs, and the adjuster said there was not. There were also other circumstances tending or claimed to show a waiver, and the court submitted that question to the jury as one of fact. It is within the power of an adjuster to waive proofs of loss (Continental Ins. Co. v. Fortner [C. C. A. 6] 25 F.(2d) 398, 402), and there is substantial evidence tending to show that he did. It was not error to submit that question.

■ In the course of the submission, the judge referred to a considerable number of circumstances, reciting them as if they tend-,ed to show lawful waiver. Some of them certainly did; perhaps some of them did not; but the only exception taken was a general one to the entire charge on the subject of waiver. Under such circumstances, the exception was not good, and the allegations of error based thereon must be overruled. Hindman v. First Nat. Bank (C. C. A. 6) 112 F. 931, 934, 57 L. R. A. 108.

It is argued that the issue of waiver of proofs of loss was not properly raised by the pleadings; and the testimony by Brooks that the adjuster said no further proofs were necessary was objected to on this ground. It is not possible to trace the issues accurately through declaration, amendments thereto, special pleas, replications, demurrers, and joinders and rejoinders, but the allegations of paragraphs 7 and 8 of the declaration, repeated by amended replication 10, formed a sufficient pleading basis for this proof; and there was no certain error in supposing that this basis had not been lost in its subsequent labyrinthian entanglements. It may be observed that the facts which tended to show waiver also tended to show that what was done was accepted as a sufficient performance; and whether the pleader gave to the inference drawn from these facts the name waiver or the name performance could never have been of much importance.

The judgment is affirmed.