**HOME INS. CO. OF NEW YORK et al. v. SCOTT, and four other cases. ***

**Nos. 5275–5279.**

Circuit Court of Appeals, Sixth Circuit.

Dec. 12, 1930.

*Certiorari granted 51 S. Ct. ——, 75 L. Ed. ——.

KILLITS, District Judge, dissenting in part.

Rolland M. Edmonds, of Columbus, Ohio (Mooney, Bibbee & Edmonds, of Columbus, Ohio, on the brief), for appellants.

F. S. Monnett, of Columbus, Ohio (James Joyce, of Cambridge, Ohio, and Elwood Murphy, of Columbus, Ohio, on the brief), for appellee.

Before MOORMAN and HICKENLOOPER, Circuit Judges, and KILLITS, District Judge.

MOORMAN, Circuit Judge.

These suits were brought in the state court and were removed by the several defendants to the federal court, where they were consolidated. Each of them sought a recovery upon a policy of fire insurance issued upon wool, including woolen bags, belonging to plaintiff. To each of them the defense was made that plaintiff had placed a chattel mortgage on the property in violation of a provision in the policies as follows: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership; * * * or if the subject of insurance be personal property and be or become incumbered by a chattel mortgage." In each of the policies there was the further provision that "no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto; and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto." This latter provision was relied upon by defendants in response to plaintiff's claim that there was a waiver of the former.

It was shown in the proofs that on June 19, 1926, the plaintiff executed a mortgage on the property to the Cumberland Savings Bank Company, and that this mortgage was subsisting with the principal unreduced at the time of the fire. It further appeared though that the mortgage had not been verified nor deposited for record as required by the Ohio Statutes. Upon this latter evidence the court concluded that it was not a mortgage, but was only a collateral contract, and, being of the further opinion that no other valid defense was made out, directed verdicts for the plaintiff for the full amount of the policies with interest.

The statutes of Ohio (Gen. Code) provide: Section 8560, a mortgage of chattels "which is not accompanied by an immediate delivery * * * shall be absolutely void as against the creditors of the mortgagor, subsequent purchasers, and mortgagees in good faith, unless the mortgage, or a true copy thereof, be forthwith deposited as directed in the next succeeding section"; section 8561, such a mortgage "must be deposited with the county recorder of the county where the mortgagor resides"; and section 8564, "the mortgagee, * * * before the instrument is filed, must state thereon, under oath, the amount of the claim, and that it is just and unpaid." We do not find from the language of these statutes that the failure of the mortgagee to comply with them vitiates the mortgage as between him and the maker. It has been ruled that it does not by the courts of Ohio. Hutchins v. Cleveland Mutual Ins. Co., 11 Ohio St. 477; Francisco et al. v. Ryan, 54 Ohio St. 307, 43 N. E. 1045, 56 Am. St. Rep. 711; Boyer v. Knowlton Co., 85 Ohio St. 104, 97 N. E. 137, 38 L. R. A. (N. S.) 224; York v. Cassell, 201 U. S. 344, 26 S. Ct. 481, 50 L. Ed. 782. Hence upon this point we think the court was wrong, and that it must be held that the mortgage was an incumbrance within the meaning of the policy provisions relied upon.

Three of the policies, those issued by the Sun Insurance Office, the Norwich Union Fire Insurance Society, and the Home Insurance Company, carried riders providing that any loss occurring under the policies that

might be proved to be due the assured should "be payable to the assured and Cumberland Savings Bank Company, subject, nevertheless, to all the terms and conditions of the policy." Two of them, those issued by the New York Underwriters Company and the Westchester Fire Insurance Company, carried no such clause. It is claimed by the plaintiff, as to these latter policies, that Stottsberry, the local agent who wrote them, was informed or knew of the mortgage, and hence, under Foster v. Scottish Union & National Insurance Co., 101 Ohio St. 180, 127 N. E. 865, and Hartford Fire Ins. Co. v. Glass, 117 Ohio St. 145, 158 N. E. 93, there were waivers of the policy provisions prohibiting the incumbering of the property. There are two objections to this contention: The first is the question is not controlled by Ohio law, but is one of general jurisprudence, Hartford Company v. Nance, 12 F.(2d) 575 (6 C. C. A.); the other, the contracts of insurance specifically provide that a waiver may be made only in a designated way, and there was no attempt to effect waivers in that way in these cases. We held in both the Nance Case and Hartford Co. v. Jones, 15 F.(2d) 1 (6 C. C. A.) that such provisions were binding upon the parties to the contract, and that, where the policy contained such a provision, knowledge of the local agent of the forbidden condition did not effect a waiver of the policy provision. In our opinion there is no escape from the application of those cases to the two policies here in question.

■■■ Nor did the defendants' failure to tender a return of the premiums that were paid on the policies operate to estop them from urging the effectiveness of the policy provisions. United States Life Insurance Co. v. Smith, 92 F. 503 (6 C. C. A.); Georgia Home Insurance Co. v. Rosenfield, 95 F. 358 (6 C. C. A.); Kentucky, etc., M. Co. v. Norwich Union Fire Insurance Society (C. C. A.) 146 F. 695. Neither did the action of the adjuster, immediately after the fire, in investigating the loss, amount to a waiver of the breach of those provisions. The evidence shows that plaintiff granted the adjuster permission to make a full investigation, and agreed that such action as he might take in that respect would not constitute a waiver nor invalidate any of the conditions of the policies. It was under this agreement and with the full consent of plaintiff that the adjuster acted. Plaintiff was nowhere misled or prejudiced by his investigation, and certainly it ought not to result in a waiver of a provision with which it had no legal connec-

tion. We hold that it did not, and also that the trial court should have directed verdicts for the New York Underwriters and the Westchester Fire Insurance Companies. Whether there are grounds for and the plaintiff may yet seek reformation of the policies issued by those companies are matters not presented on this record. See reference to Northern Assurance Co. Case, 183 U. S. 308, 22 S. Ct. 133, 46 L. Ed. 213, in Forkner v. Twin City Fire Ins. Co., 19 F.(2d) 419 (6 C. C. A.).

■■■ As to the policies with riders providing that any loss occurring under the policies should be payable to the assured and the Cumberland Savings Bank Company, the question is different. In two decisions by this court— Commercial Union Fire Insurance Co. v. Marshall, etc., 18 F.(2d) 457 and Firemen's Insurance Co. v. Brooks, 32 F.(2d) 451, 452, 65 A. L. R. 909—it has been held that such a rider is tantamount to an indorsement in accordance with the provisions of the policy permitting an incumbrance of the property. It is true that the policies in those cases provided for payment of the loss as "interest may appear"; but under the circumstances we do not think a legal distinction can be founded upon the absence of that phrase from the two policies here under consideration. Nor is Bates v. Equitable Insurance Company, 10 Wall. 33, 36, 19 L. Ed. 882, inconsistent with that conclusion. In that case there was no evidence "outside of the two indorsements * * * that there was any consent to accept Bates, the purchaser, as the party whose interest was insured," and hence the question became determinable upon implications arising from the indorsements alone. It was pointed out in that case, however, that, if it had been shown that it had been the course of dealing between the parties to recognize the indorsement of the party first assured as evidence of a sale or the indorsement of the company as a consent to the sale, or if it had been shown that by custom and usage in any particular place such indorsements were so treated, "the case might be different." In the case at bar the riders appear to have been attached to the policies by an agent of the company who was also an officer of the mortgagee bank. These riders were in the form and were attached in the manner provided for in the policies, and it is to be presumed, nothing to the contrary appearing, that the agent attaching them acted with full authority. The purpose in attaching them was to grant authority to encumber the property. The language used was that of the insurance companies and was suffi-

ciently comprehensive for the purpose for which it was intended. The reasoning of Judge Hook in his dissenting opinion in the Atlas Reduction Company Case (C. C. A.) 138 F. 509, 9 L. R. A. (N. S.) 433, is therefore directly applicable. In the Brooks Case, supra, this court chose to follow and apply that reasoning rather than that of the majority opinion, stating that, "if there were no other consideration, the familiar rule that an ambiguity should be solved against the insurance company, the party which selected the language used, would be applicable; for it is, at least, not clear that the language used might not have been intended to refer to that very interest which Trimby in fact had in the property, and which he and his grantor had agreed should be insured by the grantor and by this policy for Trimby's benefit." In this case it clearly appears that the indorsements were made with full knowledge of the facts and were intended to authorize the incumbering of the property by chattel mortgage. They are sufficiently comprehensive, as we have said, for that purpose, and, being so intended, they seem to us to be quite as effective as they would have been had they contained the further phrase "as interest may appear."

■ Complaint is made of the court's ruling in consolidating the cases and hearing them together. We think that action was proper. The main question in each case was that of liability, and each case was decided upon its own facts. There is no showing anywhere in the record that any one of the defendants was prejudiced by the trial of its case with the others. Nor in our opinion was it error to permit plaintiff to proceed with the trial without making the mortgagee bank a party plaintiff. The insurance companies agreed in case of loss to pay the money to the insured and the bank. They could have made the bank a party to the proceedings if they had wanted to. They preferred, apparently, not to do so but to litigate the claim with the party to whom the primary liability was due. After doing this they cannot be permitted to say that the judgment should be reversed because the bank was not a party. Furthermore, there is yet time for them to obtain any protection to which they may be entitled as against the bank, for when the case is remanded, the court below will see to it, no doubt, that the money is paid into court to be held until the rights therein as between the plaintiff and the bank are determined.

■ The remaining defense relates to arbitration. The policies provided, in the event of disagreement as to the amount of the loss, the same should be ascertained by arbitration, the insurance companies and the insured each to select an arbitrator, and the two so chosen to select an umpire. They further provided that no suit or action on the policies for the recovery of any claim should be maintained in any court of law or equity until there had been full compliance by the insured with all the terms and requirements of the policies. As there was no arbitration, and no steps were taken by the plaintiff to bring one about, it is contended by the insurance companies that the present suits cannot be maintained. We do not agree with the contention. The contracts of insurance did not provide for arbitration of the question of liability but of the amount of loss in case of disagreement. The defendants denied liability before suit was brought and after it was brought. Their defense went to the question of liability, not the amount of loss. The question to be arbitrated was therefore never reached, and defendants did not permit it to be reached. In this situation they cannot say that suits on the policies cannot be maintained.

■ It results from the foregoing that the lower court was right in directing verdicts against the Sun Insurance Office, the Norwich Union Fire Insurance Society, and the Home Insurance Company. The judgments against those companies, however, carried interest from the date of the fire. In this respect they were erroneous, for each policy provided that the sum for which the insurer should become liable should not accrue until sixty days after proof of loss. Proofs of loss were made on October 4, 1926. The judgments against these three companies will therefore be affirmed upon condition that appellee file in this court within thirty days a certified copy of a remittitur filed in the district court remitting the interest from the date of the fire until December 4, 1926, otherwise the judgments will be reversed. For the reasons hereinbefore stated the judgments against the New York Underwriters Company and the Westchester Fire Insurance Company are reversed.

KILLITS, District Judge (dissenting).

In United States Fidelity & Guaranty Co. v. Guenther, 31 F.(2d) 919, 920, this court cited Imperial Fire Insurance Co. v. Coos County, 151 U. S. 452, 463, 14 S. Ct. 379, 38 L. Ed. 231, to the effect that the contract provisions involved in the case then before it are manifestly "to be construed according

to the sense and meaning of the terms which the parties have used, and, if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense." In that connection Thompson v. Phenix Insurance Co., 136 U. S. 287, 297, 10 S. Ct. 1019, 34 L. Ed. 408, was also cited to the point that, if the policy "is so drawn as to require interpretation, and to be fairly susceptible to two different constructions, the one will be adopted that is most favorable to the insured."

These citations were the premise to a comment that "resort cannot be had to this latter rule to nullify the plain and obvious provisions of an insurance policy. * * * But the question remains whether the language used is in fact susceptible to a double meaning, or, otherwise expressed, whether it will fairly and reasonably support that construction upon which liability of the insurer may be sustained."

Sanborn, Judge, in Standard Life & Accident Insurance Co. v. McNulty (C. C. A.) 157 F. 224, 226, referring to the second rule above quoted said: "But this rule ought not to be permitted to have the effect to make a plain agreement ambiguous, and then to interpret it in favor of the insured."

The dissent, which, regretfully, I feel impelled to offer to the majority opinion respecting the three cases considered involving, respectively, the policies issued by the Norwich Union, Sun, and Home Insurance Companies, is founded altogether on what seems to me to be the right application to the facts of each of these cases of the principles above stated. I would make but one supplement, the propriety of which seems to me to be above question, that, when the consideration is of a rider or indorsement upon a policy of insurance, offered as a waiver of a plain provision of the contract, which waiver, as provided in another contract provision, can be effective only when it meets the plain terms of such a permitting provision, such attempts to waive must also come for interpretation as to effect under the same rules of construction as the contract itself.

In Atlas Reduction Co. v. New Zealand Insurance Co. (C. C. A.) 138 F. 497, 499, 9 L. R. A. (N. S.) 433, the precise question was present which, in the instant cases, is fundamental to the division in this court, i. e., the effect of a rider upon the policy, offered as a waiver of a defeasance provision exactly in the terms of provisions of that character in the contracts before this court. The parallel is completed in the fact that al-

so the terms of a clause in the contract there specifying how, only, a waiver could be effected, are ipsissimis verbis of similar provisions in the present contracts.

In the majority opinion in the Atlas Case, by Van Devanter, Judge, the following from Fire Insurance Company v. Coos County, supra, equally pertinent to the instant cases, is quoted: "Contracts of insurance are contracts of indemnity upon the terms and conditions specified in the policy or policies embodying the agreement of the parties. For a comparatively small consideration the insurer undertakes to guaranty the insured against loss or damage upon the terms and conditions agreed upon, and upon no other; and when called upon to pay, in case of loss, the insurer, therefore, may justly insist upon the fulfilment of these terms. * * * If the insured has violated or failed to perform the conditions of the contract, and such violation or want of performance has not been waived by the insurer, then the assured cannot recover. It is immaterial to consider the reasons for the conditions or provisions on which the contract is made to terminate or any other provision of the policy which has been accepted and agreed upon. It is enough that the parties have made certain terms, conditions on which their contract shall continue or terminate. The courts may not make a contract for the parties. Their function and duty consist simply in enforcing and carrying out the one actually made."

This majority opinion proceeds to state the controlling question in that case as follows: "What, in view of the plain and unambiguous stipulations in the policy, is the meaning and interpretation of this loss payable indorsement? Obviously, the words used therein must be read in the light of the purpose which actuated the parties in stipulating that the policy could be modified, or any provision or condition thereof waived, only by a writing of equal dignity and credit with the policy itself."

Then followed a pertinent quotation from Northern Assurance Co. v. Grand View Building Co., 183 U. S. 308, 364, 22 S. Ct. 133, 46 L. Ed. 213, a decision the importance of which to a consideration of the instant situation should not be overlooked.

The point now involved can be no more clearly stated than in the language of the foregoing from the Atlas majority opinion. It is true that this court, in decisions referred to later herein, has favored Judge Hook's dissent in that case, but, as we read the divergent opinions, the division there was

a difference of judgment whether the waiver rider peculiar to that case, was reasonably in conformity to the terms of the contract by compliance with which, only, a waiver could be effective.

It is convenient here to restate the pertinent language of the several policies involved in this discussion providing for avoidance of the contracts and for the manner in which, only, right to avoid by the insurer may be waived. The policies differ but in the placing of the paragraph which is numbered 1, below. In the Home and Norwich Union policies it is on the face of the contracts, preceding the stipulations we number herein 2 and 3, whereas in the Sun instrument, it follows 2 and 3, but, in each instance, it is addressed to the same stipulations. The quotation is from the Home policy, and the italics are mine.

"1. This Policy is made and accepted subject to the foregoing stipulations and conditions, and to the stipulations and conditions printed on the back hereof, together with such other provisions, agreements, or conditions as may be endorsed hereon or added hereto, and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the *subject of agreement* endorsed hereon or added hereto, and as to such provisions and conditions *no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver,* if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this Policy exist or be claimed by the insured *unless so written or attached.*

"2. This entire policy, unless otherwise provided *by agreement* indorsed hereon or added hereto, shall be void * * * if the hazard be increased by any means within the control or knowledge of the insured; * * * or if the subject of insurance be personal property and be or become incumbered by a chattel mortgage. * * *

"3. If, with the *consent* of this company, an interest under this policy shall exist in favor of a mortgagee * * * the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached, or appended hereto."

My view is that, to be effective, the indorsement or rider, claimed to work a waiver, as provided in the stipulation numbered 1, above, must be so worded that the acceptance of it by the insurer should be regarded as an *agreement* to continue the contract in spite of the otherwise avoiding presence of a mortgage lien; i. e., that the situation shall involve at least an implied consent that an interest shall exist in favor of a mortgagee.

In Northern Assurance Company v. Grand View Building Association, supra, it was held —183 U. S. 361, 22 S. Ct. 133, 153, 46 L. Ed. 213—that the "limited grant of authority [to waive] is the measure of the agent's power in the matter, and where such limitation is expressed in the policy, executed and accepted, the insured is presumed, as matter of law, to be aware of such limitation; that insurance companies may waive forfeiture caused by nonobservance of such conditions; that, where waiver is relied on, the plaintiff must show that the company, *with knowledge of the facts that occasioned the forfeiture,* dispensed with the observance of the condition; that where the waiver relied on is an act of an agent, it must be shown, either that the agent had *express authority* from the company to make the waiver, or that the company subsequently, *with knowledge of the facts,* ratified the action of the agent." (Italics mine).

The sweeping effect of this decision and its continued unabated authority, applicable to the instant situations, is not open to question—recognized frequently and recently by this court in unison with all other federal tribunals.

It follows, from this decision, that in the absence of actual knowledge by the insurer, otherwise shown, the alleged waiving indorsement or rider must be informative of the existence of the inhibited lien, and that knowledge of the insured's agent, not communicated to his principal, may not be imputed to the insurer.

In the Atlas Case the rider waiver, whose sufficiency was questioned, was: "Subject to all the conditions of this policy, loss, if any, payable to G. B. Dodge and A. M. Stevenson *as their interest may appear.*" The majority holding was that this language did not "in terms or by implication consent to the incumbrance created by the chattel mortgage." Judge Hook, dissenting, held, that (page 514 of 138 F.), among other things, notice might be taken that according to usage and custom the phrase "as their interest may appear" was used in such cases to refer to a chattel mortgage interest. This court, in Commercial Union Insurance Company v. Marshall, 18 F.(2d) 457, 458, 459, **where**

the rider was: "Any loss * * * proven to be due to the assured under this policy shall be held payable to [Dacus], *as interest 'may appear;"* indicated its preference for Judge Hook's reasoning and conclusion, but found that it "expressly appeared," in the record before it, "that according to the usages and practices of the community and of these insurance companies, this phrase 'as interest may appear' was understood to cover and include a chattel mortgage interest, and was the form of words in a printed rider regularly used by the insurance companies for covering and describing that kind of interest." It was also held, independently of Judge Hook's view in the Atlas Case, that "the stipulation that the loss should be payable to Dacus 'as interest may appear,' * * * applied to his interest, whatever it was, and was notice to and recognition by the insurer of his interest in the property, then or thereafter."

In Firemen's Insurance Company v. Brooks, also by this court, 32 F.(2d) 451, 65 A. L. R. 909, the rider was, page 451: "Any loss * * * shall be held payable to Thomas Trimby *as interest may appear,* subject, nevertheless," etc. In that decision this court squarely followed Judge Hook in the Atlas Case, adding, page 452 of 32 F. (2d): "If there were no other consideration, the familiar rule that an ambiguity should be solved against the insurance company, the party which selected the language used, would be applicable; for it is, at least, not clear that the language used might not have been intended to refer to that very interest which Trimby in fact had in the property, and which he and his grantor had agreed should be insured by the grantor and by this policy for Trimby's benefit."

In the Sun and Norwich Union cases the waiver rider was attached nearly a week after the chattel mortgage had been given, and nearly two weeks after the policies had issued. In the Home Case that was done contemporaneously with the issuance of the policy. Upon this phase, this court in the Brooks Case observed, page 452 of 32 F.(2d): "One distinction may be suggested, inherent in the facts of the Atlas Case. The loss payable clause was there added after the policy had been some time in force. There was a distinctly greater possibility that the insured might be using the policy as security in some way disconnected from the property, so that 'interest' might mean interest in the proceeds only rather than interest in the property,

than there could be in a case where the clause is simultaneous with the policy,—for the loss payable clause is the customary means of protecting a then existing interest in the property."

The foregoing concerning Judge Hook's position in the Atlas Case, and the view of this court in the Marshall and Brooks Cases, shows conclusively that the controlling fact in each was the phrase "as interest may appear" in the waiver rider. In each the discussion centers around it and the final conclusion depends entirely upon its interpretation and the effect thereof. These cases are not unique in this respect. Citation may be multiplied to show that its use is of the utmost importance to safeguard an interest which otherwise might work to avoid the contract, its presence, at least, rendering the alleged waiving rider or indorsement ambiguous, permitting the rule of construction to operate when ambiguity is present.

It is clearly established, and no longer controvertible, that the insured may select and nominate, for coparticipation in the proceeds of his contract, a person who has no interest of any kind in the corpus of the insured property, and that when that is done the insurer is called upon only to consider whether in case of loss it will honor such an appointment. This was clearly recognized by both sides of the division in the Atlas majority opinion, page 508, minority opinion, page 509, et seq., 138 F., and also by this court in the Brooks decision in the paragraph last quoted. See, also, the Bates Case, infra. Judge Hook, in the Atlas minority opinion, with that in mind, also applied the rule of construction followed by Judge Denison in the Brooks opinion where ambiguity exists, finding such ambiguity in the waiver rider then before him, wherefore he saw an occasion to examine into the intent of the contracting parties, while conceding [page 513 of 138 F.] that it cannot be said that there is room to resort to an inquiry into intent "when plain and unequivocal language is employed."

I have dwelt at this length upon the three decisions involved in the preceding discussion because the majority cites them in support of its position, whereas, in my view of their respective facts and the acute issue involved in each, together with the manner in which, in each, its solution was attained, they negative the conclusions of the majority.

Aside from another matter, to be discussed later, there are three outstanding dif-

ferences, plainly shown by comparison of the records, distinguishing the three cases in question.

First, the wording of the alleged waiving rider we are considering. This is startlingly inadequate to be supported by any of the "as interest may appear" decisions, for that important phrase is entirely absent. Its wording is: "Any loss under this policy that may be proved due the assured shall be payable to the assured and The Cumberland Savings Bank Co., Cumberland, Ohio, subject, nevertheless, to all the terms and conditions of the policy."

Secondly, there is not the slightest attempt, in the instant case, to allege or prove, aside from its own terms, with what intent or to serve what purpose the rider was used.

Thirdly, there was no attempt here to show, what apparently was on the record in Marshall's Case, supra, that the rider is in "the form of words in a printed rider regularly used by the insurance companies for covering and describing that kind of interest," i. e., chattel mortgage interest.

In short, the records this court is considering are so meager as to allegation, proof, or attempt to prove that, in my view, we are forced, majority and minority, to judge the effect of this attachment to the several policies, by considering the naked language used, and the quoted stipulations which the majority considers it to qualify—these three factors and, absolutely, nothing else.

The majority apparently does not agree with this, and I therefore hesitatingly proceed to take issue with certain fact statements in the majority opinion. Therein it is said of the riders: "The purpose of attaching them was to grant authority to encumber the property by chattel mortgage." Aside from the fact that there was a mortgage, I cannot find anything on the record to support that statement. All that catches my attention is that, without comment, the riders were offered and received as attachments to the several policies and that Bracken, the issuing agent, said this and nothing more: "At that time I attached the loss payable clause to those policies as agent for the companies." Even this language is ambiguous as to time and supports an incorrect inference, for the Sun and Norwich Union policies were issued June 14, the mortgage executed June 19, and the riders attached June 24, while the Home policy issued July 6 bearing the rider attached as of that date. Hereafter will be discussed the equivocal position of Bracken which deserves consideration when is sought to be decided the capacity in which he attached the riders.

Nor am I able to find in the record any testimony or proof supporting this in the majority opinion: "The language (of the riders) used was that of the insurance companies." This court, in Marshall's Case, 18 F.(2d) 457, 459, apparently entertained no criticism of Judge Hook's notice of customs (138 F. 514). If we may follow that precedent and consider, as Judge Hook said, "is a matter of common knowledge" what, "among those having to do with fire insurance either as agents of insurers or as insured," was the form of a loss payable clause, adopted by companies doing fire insurance business in Ohio, as the uniform standard for Ohio, used for years before, and in 1926, and ever since to this time, it would be found to include this pregnant phrase, which Bracken did not employ even by implication: "As their (the payees') respective interests may appear."

The majority opinion invites attention to the "circumstances" of the instant cases, under which it is of the opinion that no "legal distinction (between Judge Hook's opinion and those in the Marshall and Brooks Cases) can be founded upon the absence of that additional phrase (as interest may appear) from these policies." There are, indeed, unusual circumstances shown exclusively upon the records before us, but these, so far from diminishing the importance of the absence of the critical phrase, in my judgment emphasizes the necessity of using it if the rider was to operate as a waiver of the lien inhibition.

First in order of time was the insured's situation, June 14, 1926, when the Sun and Norwich Union policies issued. Then, according to insured's (Scott's) testimony, he had stored, afterwards destroyed, at least 70,000 pounds of wool, mostly bought in 1925, and held for a year on a falling market. His proof of loss admits that this property cost him in 1925 $34,800, and that its value at the time of the fire was but $28,700, a shrinkage in value of 17½ per cent. The amount of wool as 70,000 pounds depends upon his naked word. An attempt at corroboration by going to his vendors disclosed 40,006 pounds purchased in 1925, and 7,187 pounds in 1926, or 47,247 pounds in all. On this he had, until June 14, $5,000 insurance in the Westchester company. He was indebted, according to his testimony, to the Cumberland Savings Bank in the principal sum of $18,200, "represented (language of chattel mortgage) by various promissory notes of various dates and amounts," signed by him-

18

self, by his wife, or by both. Having taken out the Sun and Norwich Union policies for an aggregate of $11,500 on June 14, five days later he gave the bank the chattel mortgage, and five days still later or ten days after their issue, the Sun and Norwich Union policies were caused to carry the rider loss payable clause. Then, July 6, he took out the Home policy for $8,000 on which, at once, was attached the rider. Bracken, the agent writing these three policies for $19,500, was at the same time cashier of the chattel mortgagee bank. August 14 the last policy for $3,500 was taken out. During the season of 1926, Scott's principal purchases were on commission for a Mr. McMurdy. August 28 all of the McMurdy wool was taken out. Saturday afternoon, September 2, some wool was again bought and stored in the burned building for McMurdy. In the early morning of Monday, September 6, the fire occurred. All of Scott's records were destroyed. Cumberland, where the fire occurred, and where the chattel mortgage was executed, and where Bracken lived, was a small village of less than 1,000 population as shown by the census. Bracken had been at the storage place during the period involved "several times to see Mr. Scott (the insured) on business." The chattel mortgage executed June 19 was neither filed nor verified, wherefore it was at all times insufficient to protect Bracken's bank from intervening creditors of Scott.

I draw no inferences from these facts save (1) that Scott was in losing and involved circumstances during the entire time; (2) that his condition was more or less obvious in this small community, especially known to Bracken, the active agent of his very large creditor, the bank; (3) that the latter, through Bracken, had an acute interest in protecting its numerous and, in the aggregate, large loans; (4) that Bracken, being at the same time in the business of loaning money and protecting the loans, and an insurance agent issuing the critical policies, presumably knew both how to protect his bank against the insurance companies in the use of an effective loss payable clause and, against Scott's creditors, what was necessary to be done with the mortgage; (5) that the moral hazard, always recognized in the arising of a mortgage lien, was intensified in this instance because of Scott's failing fortunes; (6) that significance attaches to the facts that the mortgage was not filed, and that riders of the character shown in the records were used.

Crass stupidity may explain why Bracken failed to protect his bank against Scott's creditors and used a defective rider, but a more reasonable explanation, considering that he had been chosen to hold two responsible positions, is that he had some purpose to serve thereby, for these omissions are correlated. However, the circumstances noted do not appear to me to have the effect, suggested by the majority, to render of no consequence the absence of the customary "interest" phrase.

One matter does however so stand athwart the situation as to greatly weaken the plaintiff's case by destroying one inference which otherwise might be helpful, and that is Bracken's duality of representative obligations when he acted in attaching the riders. These were then incompatible. His activity in increasing the moral hazard through the chattel mortgage was for the advantage of his bank principal, and, correspondingly to the disadvantage of his insurance principals. This incompatible duality makes it impossible to attribute to the insurers any act of his which favored either the bank or the insured through the bank. Mulrooney v. Royal Insurance Company, 163 F. 833, 835 (9 C. C. A.); Arispe Mercantile Company v. Capitol Insurance Company, 133 Iowa, 272, 110 N. W. 593, 9 L. R. A. (N. S.) 1084, and annotations, 12 Ann. Cas. 93; American Surety Company v. Pauly, 170 U. S. 133, 18 S. Ct. 552, 42 L. Ed. 977; Aetna Indemnity Company v. Schroeder, 12 N. D. 116, 95 N. W. 436. Consequently it may not be charged against the insurers that they, through their agent, produced and attached the riders. We have, therefore, as I look at it, nothing in this record to serve our judgment of the effect of the riders, save the inhibiting stipulations of the contracts, the provisions for waiving those stipulations, and the wording of the alleged waiver.

It is difficult for me to see how any support for the majority position is found in the three "as interest may appear" cases. I do not entertain any question whatever but that our Marshall and Brooks Cases were rightfully decided. But to go beyond them, and to ignore, while still using them, the critical fact upon which each depended, is, I think, without justification. When they are eliminated from the majority opinion it seems to be entirely without precedent, unless it be the Bates Case soon to be discussed.

As I construe the language of this rider it tends to rebut an impression that the bank held an interest in the insured property, of whatever sort, because, if its right to participation in a recovery in consequence of such interest existed at all, the measure of that recovery would be the extent of the interest

—here the direction is that damages "due the assured" are to be "payable to the assured" and the bank, divided on apparently equal terms between them. There is nothing which, once the direction is accepted by the insurer, requires the latter to go behind its terms to see that the extent of the bank's interest in recovery is exactly protected—it casts upon the insurer no duty of inquiry whatever.

The insurance practice, noted by Justice Miller in the Bates Case, infra, and Judge Denison in the Marshall Case, of appointing, as copayee of a loss, one who has no interest in the subject of insurance, is a factor of interpretation in such cases as we have here—one upon which the issuing companies were entitled to rely, and which this court should also consider. It is also noteworthy that the provision for a waiver of the defeasance clause says that the attached or indorsed waiver shall take the form of an "agreement" to waive. The question, therefore, is whether this rider achieves the dignity of an "agreement" to waive a very serious moral hazard, not referred to therein, and which the terms of the contract inhibit without a specific agreement.

I am unable to see the slightest ambiguity whatever in the language of the rider in these cases—it is just what it might well be to make the bank a mere appointee in proceeds of recovery alone, with no suggestion that that appointment is based upon a subsisting interest in the corpus. Riders and indorsements of no less equivocal or ambiguous character than this have been before the courts to be interpreted to that result. One citation, still authoritative, which the majority cites, is sufficient for the present discussion. In Bates v. Equitable Insurance Company, 10 Wall. (77 U. S.) 33, 34, 19 L. Ed. 882, where a policy contained the usual covenant that, if the property were sold, the insurance ceased unless the insurer consented in writing, it was held that an indorsement that the policy was "payable, in case of loss, to E. C. Bates," followed by the insurer's indorsement that "consent is hereby given to the above indorsement," did not imply either a knowledge or consent to a sale of the insured property. In this case the property had been sold to Bates, the appointee. In it, as here, there was, as noted by Mr. Justice Miller, page 37 of the report, no proof of a course of dealing between the parties or of usage and custom which qualified the language used, wherefore the court saw in the language used "nothing more than the direction of Philbrick [the insured], and the consent of the company, that any loss sustained by Philbrick, covered by that policy, should be paid to Bates." As to this case the majority opinion says: "In that case there was no evidence 'outside of the two indorsements * * * that there was any consent to accept Bates, the purchaser, as the party whose interest was insured,' and hence the question became determinable upon implications arising from the indorsements alone. It was pointed out in that case, however, that if it had been shown that it had been the course of dealing between the parties to recognize the indorsement of the party first assured as evidence of a sale or the indorsement of the company as a consent to the sale, or if it had been shown that by custom and usage in any particular place such indorsements were so treated, 'the case might be different.' "

In the instant cases there are none of the qualifications, such as are referred to in the foregoing quotation, because of which "the case might be different," wherefore, here, as in the Bates Case, "the question becomes determinable upon implication arising from the indorsements (rider) alone."

My conclusion, based on what seems to me to be the unambiguous character of its language to merely appoint the bank as a coparticipant with Scott in recovery on the policies, and its utter lack of informing quality that the moral hazard of a mortgage lien attends the risk, is settled that the majority has failed to observe the rule laid down by Judge Hickenlooper, in the Guenther Case, referred to at the opening of this opinion, equally applicable to the construction of an effort to work a waiver of the provision for defeasance in case of a lien increase in the risk, that "resort cannot be had," in a case such as here, to the rule respecting resolution of ambiguities, because there is here no "double meaning" for that here the language used will not "fairly and reasonably support that construction upon which liability of the insurer may be sustained," and that our judgment should be, as in the Westchester and New York Underwriters cases, that the trial court should have directed verdicts for the defendants whose cases are herein considered.

The majority opinion savors, in my judgment, of a controversion of Judge Sanborn's injunction, Insurance Company v. McNulty, supra, that the rule as to ambiguities cannot be permitted "to have the effect to make a plain agreement ambiguous, and then to interpret it in favor of the insured." Judge Hook, concluding his dissent in the Atlas Case (page 516 of 138 F.) says of the decision of the Supreme Court in the Northern

20

Assurance Case, supra, that by it "the tendency to the unrestrained invasion of the clear terms of policies of insurance by oral testimony which was so destructive of the rights of the companies has been well checked." It seems to me that the majority position tends to lower the bars to such invasion which the Supreme Court erected. The majority conclusions appear to me, also, inconsistent with the decisions of this court in the Nance and Jones Cases, 12 F.(2d) 575, Syllabus 5, and 15 F.(2d) 1, Syllabus 3.

Even if Bracken's acts in attaching the rider should be imputed to the insurers in spite of his adverse interest, in the performance of those acts, as the managing agent of the beneficiary of the riders, still in face of the immanent doctrines of the Northern Assurance Case that his knowledge is not that of the insurers and that definite provisions of the contracts as to the character of the waiver as a carrier of information such as we have must be honored, it is of no importance as these records stand. The question is not decided by what Bracken knew or intended or both. It is the matter of what knowledge the insurers had of the purpose of the riders that counts. They convey no hint of a chattel mortgage, and there is not a scintilla of proof that the insurers knew anything about it whatever. As the language of the riders is without ambiguity, sufficient and reasonable to perform a far different office well known in insurance practice, it does not suffice to put the insurers on inquiry, even if the longest period, June 24 to September 5, may be considered a reasonable time for such inquiry by these particular companies.

There is no proof or even pleading that any one of the three companies knew of the mortgage, or had the slightest hint that the bank was interested in the insured property in any way; nor is there proof or pleading that it was intended by this phraseology to convey such information to any insurer, or to have the rider work the waiver of the defeasance clause of the contract. The insured, Scott, knew, by the character of the answer, that defense would be made that the rider was inadequate to serve the purpose for which the majority of this court now holds it is sufficient. He had his opportunity, which is not yet lost, to reform the contract if he has proof with the essential qualifications which would make reformation possible at equity, wherefore there is no place here, ex debito justiciae, to relieve him, even if that were justifiable in these straight actions at law. Respectfully it is urged that courts, even Appellate Courts, should be slow, especially in cases at law, to relieve parties from the consequence of ineptitude or carelessness in presentation.

In my judgment the fact is not significant that in the Home case the issuing of the policy and the attachment of the rider were simultaneous, whereas in the other cases the rider was attached to an old policy.

As intimated I concur in the disposition by the majority of the Westchester and New York Underwriters cases. The Home, Sun, and Norwich Union cases clearly seem to me to deserve the same findings and order.

*Certiorari granted 51 S. Ct. 352, 75 L. Ed. ——.